# LAW OFFICE OF CHAD J. LAVEGLIA PLLC

September 23, 2023                    ORAL ARGUMENT REQUESTED

>            Re: <u>Famiglietti v. NYC Department of Sanitation et al.,</u>
>            Docket No.: 23-cv-02754 (LDH) (VMS)
>            COVER LETTER MEMORANDUM OF LAW

    I represent Plaintiff. Enclosed is Plaintiff's Memorandum of Law in Opposition to your motion to dismiss pursuant to Rule 12(b)(6).

Thank you.

Dated:           September 23, 2023
                 Uniondale, New York

>            Respectfully Submitted,
>
>            _____
>            By: Chad J. Laveglia Esq.,
>            Law Office of Chad J. LaVeglia PLLC
>            626 Rx=R Plaza, Suite #613
>            Uniondale, NY 11566
>            (631) 450-2468
>            claveglia@cjllaw.org

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

ROCCO FAMIGLIETTI

        Plaintiffs,


   -against-

                             Case no 1:23-cv-2754

NEW YORK CITY DEPARTMENT OF
SANITATION, CITY OF NEW YORK, ERIC ADAMS,
DAVID CHOKSHI


        Defendants


**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

LAW OFFICE OF CHAD J. LAVEGLIA PLLC
262 RXR Plaza, Suite #613
Uniondale, New York 11556
(631) 450-2468
claveglia@cjllaw.org

*Attorneys for Plaintiff*

Table of Contents

PRELIMINARY STATEMENT ...........................................................................................................4

STATEMENT OF FACTS ................................................................................................................4

ARGUMENT ...............................................................................................................................4

I.   DEFENDANTS MOTION MISCONSTRUES THE APPLICABLE LEGAL STANDARD, IGNORES MATERIAL FACTS, AND IS CONTRARY TO SUPREME COURT PRECEDENT. .............................................................4
A.   DEFENDANTS MISCONSTRUE THE LAW. .....................................................................................4
II.   DFENDANTS FAIL TO DEFEAT PLAINTIFF'S EQUAL PROTECTION CAUSE OF ACTION BECAUSE IT'S ARGUMENT RELIES ON A SEVERELY FLAWED INTERPRETATION OF "SIMILARLY SITUATED", IS ILLOGICAL, AND CONTRADICTS SUPREME COURT PRECEDENT. ........................................................................8
B.   DEFENDANTS DIRECTLY ASK THIS COURT TO IGNORE UNITED STATES SUPREME COURT PRECEDENT AND DO NOT GRASP WHAT SIMILARLY SITUATED MEANS IN THE CONTEXT OF A COMMUNICABLE DISEASE. ......................................8
III.   PLAINTIFFS HAVE A VIABLE CAUSE OF ACTION PURSUANT TO NY CONST ART. I §XI. .....................................13
IV.   DEFENDANTS MISCONSTRUE PLAINTIFF'S TITLE VII CLAIMS AND FAIL TO SHOW THAT THE CLAIMS ARE LEGALLY INSUFFICIENT. ........................................................................................................13
A.   PLAINTIFF PLAUSIBLY ALLEGES RELIGIOUS DISCRIMINATION, AND THE DEFENDANTS MISS THE MARK YET AGAIN. .......13
B.   THE DEFENDANTS' CONDITION OF EMPLOYMENT ARGUMENT IS A RED HERRING. ...................................................15
C.   PLAINTIFF MORE THAN ADEQUATELY PLEAD DEFENDANT'S FAILURE TO ACCOMMODATE UNDER TITLE VII AND DEFENDANTS FAIL TO PROVE OTHERWISE .........................................................................................................16
V.   DEFENDANTS INCORRECTLY CLAIM PLAINTIFF DID NOT FILE A COMPLAINT WITH THE EEOC WITHIN THE REQUISITE TIME FRAME. ...........................................................................................................19
A.   DEFENDANTS IMPROPERLY INCORPORATE PLAINTIFF'S EEOC APPLICATION. ......................................................19
B.   PLAINTIFF PROPERLY EXHAUSTED HIS ADMINISTRATIVE REMEDIES WITHIN THE REQUISITE TIME. .............................20

CONCLUSION ...........................................................................................................................22

Cases

Arista Records, LLC v. Doe 3, 604 F.3d 110, [2d Cir. 2010] ........................................... 5

Arizona v. Mayorkas, 598 U.S. ___, __, [2023] .................................................................. 9

Ashcroft v Iqbal, 556 U.S. 662, [2009]. ........................................................................... 4, 5

Bath et al., v. FDNY, [U][2023 N.Y. Misc. LEXIS 2744, at *4 [Sup. Ct. N.Y. Cnty, 2023] ....................................................................................................................... 20

Bell Atl. Corp. v. Twombly, 550 U.S. 544, [2007], ............................................................. 5

C.F. v. New York City Dep't of Health & Mental Hygiene, 191 A.D.3d 52, 277 [2d Dept. 2020] ............................................................................................... 11

Carter v. State, 95 N.Y.2d 267, 270 [N.Y. 2000] .............................................. 20

Cortec Industries Inc. V. Sum Holding LP., 949 F.2d 42 [2d Cir. 1991] ...................... 19

FSK Drug Corp. v. Perales, 960 F.2d 6, [2d Cir. 1992]) ....................................... 8

Groff v. DeJoy, 600 U.S.__, __[2023]. .................................................... 16, 20

Hamilton v. City of New York, 2021 WL 4439974, [E.D.N.Y. Sept. 28, 2021] ........... 17

Hickey v. State Univ. of N.Y. at Stony Brook Hosp., 2012 WL 3064170, [E.D.N.Y. July 27, 2012] ............................................................................................... 17

Hu v. City of New York, 927 F.3d 81 [2d Cir. 2019 ......................................... 8

L-7 Designs Inc. v. Old Navy, LLC, 647 F.3d 419 [2d Cir. 2011] ................................. 19

Lynch v. City of New York et al., 952 F.3d 67,[2d Cir. 2018] .............................. 4, 18, 19

Matson v. Bd. of Educ. of City Sch. Dist. of New York, 631 F.3d 57, [2d Cir. 2011].. 5

Mundy v. Nassau County Civil Serv. Commn., 44 N.Y.2d 352, [1978] ...................... 20

Neitzke v. Williams, 490 U.S. 319, [1989]. ................................................. 5

NFIB v. OSHA 595 U.S. ____ [2022] ...................................................... 9, 10

Richards v. N.Y.C. Bd. Of Educ., 668 F.Supp259, [S.D.N.Y. 1987] .............................. 14

Robinson v. 12 Lofts Realty Inc, 610 F.2d 1032, [2d Cir. 1979] ................................... 14

Smith v. Hogan, 794 F.3d 249 [2d Cir. 2015] .................................................... 19

Torcaso v. Watkins, 367 U.S. 488 [1961] ..................................................... 17

Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, [2d Cir. 2015] ............ 5, 13, 14

Weber v. City of New York, 973 F. Supp. 2d 227, [E.D.N.Y. 2013] .............................. 17

Zahra v. Town of Southold, 48 F.3d 674, [2d Cir. 1995] ...................................... 8

## PRELIMINARY STATEMENT

Plaintiff relies on the Preliminary Statement in the Complaint.

## STATEMENT OF FACTS

Defendants need to be reminded that the only dispositive statement of facts, are the ones plead in the complaint. Defendants' "statement of facts" section is completely improper *see* (Def Memo pp 2-5). Defendants seem to believe that it can use its motion to dismiss, as a vehicle to attack some facts, ignore others, and add in its own. It is dead wrong. Plaintiff absolutely denies and objects to every single word in the "statement of facts". Defendants attempt to counter and obfuscate the facts plead is misplaced. This Court should not give any credence to the arguments presented as facts since it is completely improper in a Rule 12 (b) (6) motion. The City of New York knows better.

## ARGUMENT

I.   **DEFENDANTS MOTION MISCONSTRUES THE APPLICABLE LEGAL STANDARD, IGNORES MATERIAL FACTS, AND IS CONTRARY TO SUPREME COURT PRECEDENT.**

   **A. Defendants misconstrue the law.**
   Amazingly, Defendants contort the applicable legal standard in a frivolous and futile attempt to dismiss the complaint. At this early stage in the proceedings, Defendants ask this Court to act as fact finder. As such, this Court should deny Defendant's motion.

1

It is beyond well settled that in deciding a Rule 12 (b) (6) motion to dismiss this Court is bound to accept all factual allegations in the complaint as true. <u>Ashcroft v Iqbal</u>, 556 U.S. 662, 678 [2009]. Furthermore, this Court's "task is to assess the **legal feasibility of the complaint; it is not to assess the weight of evidence that might be offered by either side**: Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." <u>Lynch v. City of New York et al.</u>, 952 F.3d 67, 75 [2d Cir. 2018] (emphasis added). "The choice between or among plausible inferences or scenarios is one for the fact finder. . .. [it] is not a choice to be made by the court on a Rule 12(b)(6) motion." *Id.* As far as plausibility, the Court must at all times in a fair and deliberative fashion, alert to any unconscious bias that could affect decisionmaking." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 87 [2d Cir. 2015]. [1]

To survive a motion to dismiss, the complaint "need not contain 'detailed factual allegations[.]'" <u>Matson v. Bd. of Educ. of City Sch. Dist. of New York</u>, 631 F.3d 57, 63 [2d Cir. 2011] (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 [2009]). While the plaintiffs must plead factual allegations that "raise a right to relief above the speculative level," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, [2007], the law demands "only enough facts to state a claim to relief that is plausible on its face." <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 [2d Cir. 2010]. A complaint is sufficient so long as a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"

---

[1] The possibility of unconscious bias is omnipresent regarding COVID-19.

*2*

Iqbal, 556 U.S. at 678.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely" Twombly, 550 U.S. at 556, (internal quotation marks omitted). Further, a court cannot dismiss a complaint "based on the judge's disbelief of a complaint's factual allegations." Neitzke v. Williams, 490 U.S. 319, 327 [1989].

Here, Defendants do not argue that the facts plead in the complaint are implausible. Its motion is bereft of any analysis showing that the inferences to be drawn are not reasonable or fail to show that the defendants are liable for the misconduct alleged. Instead, it arrogantly attempts to undercut the facts by summarily dismissing them as "conspiratorial" and "farcical" (see Def Mem. ¶¶ 1, 12, respectively). The defendant's cling to the same narrative that Plaintiff is challenging. Thus, Defendants fail from the outset because its motion is based on facts as it sees it, not what is plead in the complaint.

A. **Defendants omit material, controverted facts out of necessity.**

Defendants conveniently omit or dismiss the very facts that are fatal to its motion to dismiss. That is, if Defendants conceded the well plead facts, then it could not prevail on its Rule 12 (b) (6) motion. Therefore, Defendants ignore them entirely. Thus, Defendants' motion is legally infirm.

For example, Defendants ignore that during a worldwide outbreak of a communicable disease, the defendants police powers allow it to take measures that protect the health and welfare of the entire public (see Compl. ¶¶ 27-28). The defendants ignore that it implemented the Mandate to prevent the transmission of

3

the Virus, that the Vaccine does not slow down its spread, nor stop the transmission of the Virus (*see e.g.* Compl. ¶¶ 27-71). Defendants ignore that COVID-19 was not a threat specific to the workplace, but its Mandate only applied to City employees like Plaintiff (*see* Compl. ¶¶ 33-34).

Moreover, Plaintiff's allegations far exceed the plausibility standard. For instance, Plaintiff does not simply claim that the Vaccine does not stop the transmission of the Virus. Plaintiff provides facts and reasonable inferences that can plausibly be drawn from them. For instance, if the Vaccine did work then there would be no breakthrough cases or need for frequent booster shots (*see e.g.* Compl. ¶¶ 30-71). The Corporation that made one of the Vaccines—Pfizer—even acknowledged that the Vaccine was never intended to stop the transmission of the Virus (*see* Compl. ¶57). This alone is sufficient.

Plaintiff goes even further. Plaintiff raises additional triable issues of fact such as natural immunity (*see* Compl. ¶¶ 47-51), herd immunity (*id.* at ¶¶ 68-70), ineffective booster shots (*id.* at ¶¶ 41-47, 58-64), the role of emerging variants in preventing the production of a vaccine that could stop the spread of the Virus (*id.* at ¶ 65), and more. Defendants do not confront the material facts though. It does not address what it must deny. Therefore, this Court should find that the defendants concede the facts it ignores or deny its motion.

Most notably, Defendants deliberately omit Eric Adams' discriminatory conduct. In fact, Defendants' do not even mention Eric Adams' conduct. That is, Defendants omit his Executive Order exempting professional athletes, performers, and private

sector employees from reach of the Mandate, for monetary profit (*see* Compl. ¶¶ 102-126) and numerous other plausibly improper motives. Eric Adams, quite literally, selectively enforced the Mandate against Plaintiff because he was worth less as a human being (*see* Compl. ¶¶ 109-112). Plaintiff was terminated after Defendant Adams issued that Executive Order (*see* Compl. ¶ 113). The Defendants cannot justify Adams' conduct, so it ignores it.

Nevertheless, for pleading purposes, Plaintiff goes above and beyond what is required to state a claim upon which relief can be granted. Defendants attempt to try the case on the merits through its motion to dismiss is grossly misplaced. It is for a jury—not Defendants or this Court—to decide the facts. Granting Defendants instant motion in its entirety would deprive Plaintiff of his right to a jury trial and run afoul of the law by placing this Court in the position of factfinder. Accordingly, this Court should deny the defendant's motion.

II.     **DFENDANTS FAIL TO DEFEAT PLAINTIFF'S EQUAL PROTECTION CAUSE OF ACTION BECAUSE IT'S ARGUMENT RELIES ON A SEVERELY FLAWED INTERPRETATION OF "SIMILARLY SITUATED", IS ILLOGICAL, AND CONTRADICTS SUPREME COURT PRECEDENT.**

   B.  **Defendants directly ask this Court to ignore United States Supreme Court Precedent and do not grasp what similarly situated means in the context of a communicable disease.**

At the pleading stage, Plaintiff  must set forth facts that plausibly show "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of

impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." Zahra v. Town of Southold, 48 F.3d 674, 683 [2d Cir. 1995] (quoting FSK Drug Corp. v. Perales, 960 F.2d 6, 10 [2d Cir. 1992]). Furthermore, Plaintiff must provide facts in which this Court can plausibly infer that there is a "reasonably close resemblance" Hu v. City of New York, 927 F.3d 81 [2d Cir. 2019].

According to Defendants, Supreme Court Justices' factual analysis of an analogous mandate is farcical. Defendant's spit in the face of federalism. Defendants claim, "Plaintiff's farcical argument that he is similarly situated to all human beings should not be countenanced by this Court" (Def. Mem. ¶12). Defendants narrow view that Plaintiff can only be compared to other employees is illogical, rigid, and untenable. Alternatively, it is a disputed question of fact, that would be improper for this Court to decide.

In NFIB v. OSHA 595 U.S. ___ [2022] (per curium) the federal government mandated that all employees working for employers with over 100 workers must be vaccinated. (Id. At 4). Unvaccinated employees who did not comply with the rule would be "removed from the workplace." (Id.) The Supreme Court stayed the rule mandating vaccination. Importantly, the Court reasoned that "[a]lthough COVID–19 is a risk that occurs in many workplaces, it is not an occupational hazard in most. COVID–19 can and does spread at home, in schools, during sporting events, and everywhere else that people gather. That kind of universal risk is no different from the day-to-day dangers that all face from crime, air pollution, or any number of

communicable diseases." (*Id.* at 6-7). *See also* <u>Arizona v. Mayorkas</u>, 598 U.S. ___, 4, [2023] (statement of Gorsuch J) ("… this case illustrates the disruption we have experienced over the last three years in how our laws are made and our freedoms observed).

Defendants fail to comprehend that its Mandate is the epitome of selective enforcement. Here, similar to <u>NFIB</u> *id.* Defendants mandated that only City employees like Plaintiff must get vaccinated while everyone else was free to choose (*see* Compl. ¶¶ 22-25). However, as the Court in <u>NFIB</u> *id.* at 6-7, *aptly* noted, COVID-19 is a risk that is present everywhere people gather. It is no different from other dangers people face daily *id. See* (Compl. ¶¶ 34-35). Defendants still grasp onto the illogical illusion that the Virus somehow does not exist outside the workplace. Defendants cannot deny that the Virus can infect any human being gathering in public, irrespective of vaccination status.

Defendants however, selectively enforced the Mandate against Plaintiff because he was unfortunate enough to be a city employee. *See e.g.* (Compl. ¶¶ 34-35). Mandating only City employees—like Plaintiff—get vaccinated in a city with approximately eight million people living in it, is completely arbitrary since it has no reasonable nexus to stopping the spread of the Virus. *See e.g.* (Compl. ¶¶ 34-35). In addition, vaccines "cannot be undone at the end of the workday." <u>NFIB</u> *id.* at 7. Thus, the Mandate affected Plaintiff outside of the workplace. As such, Defendants' disparate treatment deprived him of the same choice that everyone else had.

Moreover, Defendants assumption that Plaintiff must "name" one of the eight million people that live in the City, falls flat *see* (Def Mem. p 13). Furthermore, Defendants claim that Plaintiff ". . . fails to allege one other human being who was treated different by Defendants" *id.* is laughable. Plaintiff plead facts establishing that over eight million people were treated differently than him. Nevertheless, even if there were any doubt, Eric Adams' Executive Order No. 62 eliminates it.

On March 24, 2022, Defendant Adams carved out an exemption in the Mandate to exclude professional athletes and performers *see* (Compl. ¶ 109). His justification was grounded in economics, not public health *see* (Compl. ¶ 111). Eric Adams has yet to give a cogent reason for the exemption. That is because there is none. Furthermore, Adams never enforced the Mandate for employees in the private sector *see* (Compl. ¶ 104). New York Nets basketball star Kyrie Irving could play basketball in Brooklyn again, but Plaintiff could not work in the Department of Sanitation *see* (Compl. ¶¶ 202-209). Plaintiff was terminated after Defendant Adams issued Executive Order No. 62 *see* (Compl. ¶ 113).

A. **Defendants' rigid interpretation makes even less sense in the context of an outbreak of communicable disease.**

In the context of communicable disease, who is, and who is not, similarly situated is connected to geographical boundaries—which in this case is New York City. That is every single borough, because the Virus spread throughout all five boroughs. Defendants blindly suggest that Plaintiff can only be similarly situated to other employees. Not so.

In <u>C.F. v. New York City Dep't of Health & Mental Hygiene</u>, there was a measles outbreak in specific areas of Williamsburg, Brooklyn. 191 A.D.3d 52, 277 [2d Dept. 2020]. The commissioner of the Department of Health and Mental Hygiene "mandated that any unvaccinated person older than six months of age who lived or worked **within four specified zip codes in the Williamsburg** neighborhood must be vaccinated unless such person could demonstrate to the satisfaction of the City Health Department either that the person already had immunity to the disease or should be treated as medically exempt." *Id.* (emphasis added). Those zip codes were chosen because that is where the outbreak occurred. *Id.* Thus, the commissioner was trying to contain measles from spreading beyond those geographical areas where there were outbreaks.

Here, in contrast, Defendants mandated only City employees during an outbreak affecting over eight million people, spanning the entire City. The defendants completely destroyed common sense and logic entirely. That is because the Mandate was never about public health. What If the commissioner in <u>C.F.</u> *id.* decided to mandate only people in one zip code get vaccinated? Or chose to mandate only folks with blond hair to get vaccinate? How about if the commissioner based the mandate in that case on skin color? Undoubtedly, such decisions would be arbitrary at best, and discriminatory at worst. In this case, Defendants turned absurd hypotheticals into reality by mandating only City employees—like Plaintiff—be vaccinated.

In addition, Defendants acted with an intention to discriminate on the basis of impermissible considerations *see* (Compl. ¶¶ 127-243). As such, Plaintiffs Equal

Protection cause of action sets forth facts from which this Court can draw reasonable inferences that the defendants are liable for the misconduct alleged. Accordingly, Defendants challenge to Plaintiff's selective enforcement claim should be denied. Alternatively, it should be denied because Defendants grossly failed to show how the complaint is insufficient. There are triable issues of fact that Defendants have either overlooked, ignored, or never took the time to read.

III.   **Plaintiffs have a viable cause of action pursuant to NY Const art. I §XI.**

IV.   **DEFENDANTS MISCONSTRUE PLAINTIFF'S TITLE VII CLAIMS AND FAIL TO SHOW THAT THE CLAIMS ARE LEGALLY INSUFFICIENT.**

   A.   **Plaintiff plausibly alleges religious discrimination, and the defendants miss the mark yet again.**

Initially, Defendants go on a tangent that is completely irrelevant here *see* (Def Mem. p. 15). Additionally, Plaintiff has plead in the alternative pursuant to Fed. R. Civ. P. 8 (d)(2).

To survive a motion to dismiss a religious discrimination claim under Title VII, Plaintiff must allege facts that plausibly show "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin *was a motivating factor in the employment decision Id.*" <u>Vega v. Hempstead Union Free Sch. Dist</u>., 801 F.3d 72, 87 [2d Cir. 2015] (emphasis added). As to the first element, termination of employment is an adverse employment action. <u>Terry v. Ashcroft,</u> 336 F.3d 128, 138 [2d Cir. 2003]. Here, Plaintiff was terminated on April 25, 2022, *see* (Compl. ¶113). As such, Plaintiff has plead facts sufficient to meet the first element.

Plaintiff similarly sets forth facts sufficiently showing that religion was a ***motivating factor***. *Id.* (emphasis added). This Court is still bound to "assume the factual allegations in the complaint as true, even if [they are] doubtful in fact." Vega, *id.* at 86 (internal citations and quotes omitted). As far as plausibility, the Court must at all times in a fair and deliberative fashion, alert to any unconscious bias that could affect decisionmaking." *Id.*

Defendants put together a hodgepodge of arguments that make little to any sense. First, Defendants falsely insinuate that a religious discrimination claim must require being "criticized in religiously degrading terms, or that invidious comments were made about him or others . . ." (Def Mem. p 16). Second, Defendants make averments concerning leave without pay (LWOP) that were not plead in the complaint, nor did they need to be. *Id.* This ends their argument and the inquiry.

Alternatively, Defendants completely ignore the facts plead about abortion. Indeed, the defendants claim Plaintiff fails to set forth any facts about religious discrimination. (Def Mem. p 16). To the contrary. As an aside, the final denial of Plaintiff's request for an accommodation meant he would be terminated. Thus, they are inextricably interwoven. Defendants' analysis fails to recognize that. This is fatal here and in its subsequent arguments. A Plaintiff can meet his burden at the pleading stage under the second element by "indirectly showing circumstances giving rise to an inference of discrimination." Vega, 801 F.3d 72, 87 [2d Cir. 2015].

In these types of cases, "the Court must be mindful of the elusive nature of discrimination." Vega, at 86. "[C]lever men may easily conceal their motivations."

<u>Robinson v. 12 Lofts Realty Inc.</u> 610 F.2d 1032, 1043 [2d Cir. 1979]. This Circuit has recognized that there is rarely "direct, smoking gun, evidence of discrimination." <u>Richards v. N.Y.C. Bd. Of Educ.,</u> 668 F.Supp259, 265 [S.D.N.Y, 1987]. At the initial pleading stage, "the plaintiff's burden is minimal—he need only plausibly allege facts that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." <u>Vega</u> *id.* (cleaned up).

Here, Plaintiff has provided more than minimal support. Plaintiff averred that an attorney with the Sanitation Department immediately challenged his pro-abortion views. *See* (Compl. ¶¶ 83-87). Plaintiff then referenced a public statement Adams made on social media regarding his disdain for pro-abortion viewpoints. It might not be a smoking gun, but it is pretty close *see* (Compl. P 29).

Eric Adams is the mayor of New York City. He attacked the Supreme Court's decision in <u>Dobbs</u> which simply held that abortion was a policy left for the states. Adams first referenced the entire Supreme Court as extremists, then accused them of "[schackling] women and others in reproductive bondage." Adams then went on to attack a pro-abortion ruling in Texas. What does the mayor of New York City have to do with Texas? Nothing. Defendants comically do not consider this as facts from which discrimination can be inferred. It is wrong. Accordingly, the Court should deny Defendants' motion to dismiss this cause of action.

**B. The defendants' condition of employment argument is a red herring.**

Defendants' scatter this red-herring argument throughout its Memorandum of Law, claiming that vaccination was a condition of employment, but not FOR

PLAINTIFF. Defendants cite cases that have nothing to do with Mr. Famiglietti's contract. It cites a case involving teachers (DOE) and the New York Police Department (NYPD). Defendant provides no authority—nor does one exist—proving that Mr. Famiglietti had to get vaccinated as a condition of employment. As such, Defendants' argument fails. Accordingly, this red-herring—like all red herrings—should be ignored.

Defendants' argument (Def Mem. p 17) about LWOP falls within the bucket of nonsensical, irrelevant, and misplaced arguments.

### C. Plaintiff more than adequately plead Defendant's failure to accommodate under Title VII and Defendants fail to prove otherwise.

Plaintiff was allowed to work while his accommodation was pending according to Defendants. Defendants' have the burden to show that "granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." Groff v. DeJoy, 600 U.S.__, __ [2023]. It has not met its burden.

In addition, the sincerity of Plaintiff's religious beliefs cannot be doubted as plead.[2] Accordingly, Defendants attempt to turn a matter of fact into a matter of law should be disregarded by the Court. As such, Defendants motion to dismiss Plaintiff's failure to accommodate claim should be denied from the outset because it fails to prove that Plaintiff insufficiently alleged this cause of action in the Complaint. Alternatively, Defendant's attack on Mr. Famiglietti's belief itself is incorrect.

---

[2] According to the EEOC (relied on by Defendants) "[w]hether or not a religious belief is sincerely held by an applicant or employee is rarely at issue in many types of Title VII religious claims." This is not one of the exceptions.

Plaintiff's religious beliefs as plead are certainly, within his own scheme of things, religious *see* (Compl. ¶¶ 77-82). Defendants are in absolutely no position to label his religious beliefs as political. Indeed, it is the Defendants who have politicized COVID-19. After all, Defendants are comprised of politicians. Defendants label Plaintiff's religious beliefs as personal to later bolster its argument with caselaw *see* (Def Mem. p 19). This is logically flawed. If Defendants' labels are removed, then the caselaw it relies on is irrelevant. Defendants' argument is intrinsically, logically flawed because it is circular.

Alternatively, the Complaint demonstrates Plaintiff's religious belief is bona-fide. "The term 'religion' includes all aspects of religious observance and **practice, as well as belief** . . ." Hamilton v. City of New York, 2021 WL 4439974, at *4 [E.D.N.Y. Sept. 28, 2021] (emphasis added). The government may not compel affirmation of religious belief *see* Torcaso v. Watkins, 367 U.S. 488 [1961]. Regarding whether a belief is a bona-fide religious belief, "the Court's analysis is limited to whether the beliefs professed by the plaintiff are sincerely held and whether they are, in his own scheme of things, religious." Hickey v. State Univ. of N.Y. at Stony Brook Hosp., 2012 WL 3064170, at *6 [E.D.N.Y. July 27, 2012]; Weber v. City of New York, 973 F. Supp. 2d 227, 258–59 [E.D.N.Y. 2013].

Here, Mr. Famiglietti very clearly explains how the Mandate conflicts with his sincerely held religious beliefs. As a Catholic, Mr. Famiglietti believes in the sanctity of life. According to his faith, abortion constitutes murder. Since the Vaccine is derived from aborted fetal cells, he objected to it. *See e.g.* (Compl. ¶¶ 77-82). Plaintiff

14

objected to the Vaccine as a derivate of aborted fetal cells. That basis should have been sufficient. A religious accommodation should not be denied simply because there is more than one reason provided.

Secondly, Mr. Famiglietti's reliance on his conscious is also a bona fide religious belief. Mr. Famiglietti references the Catechism of the Catholic Church. That is, he directly references religious doctrine under which his belief is formed. Defendants arrogantly disregard religious doctrine. Still, defendants fall short. Despite the actual separation of church and state, God is present on our currency, on the walls of courtrooms and schools, and other secular institutions.

Society benefits from the concept of God because it inspires most people to act for the betterment of fellow humans. Why is this important? Because it is exactly what Mr. Famiglietti means when he discusses his conscious. His conscious guides him between right and wrong. And his conscious is guided by God. Do Defendants' question Mr. Famiglietti's sincerely held beliefs, or do they questions the existence of God? Accordingly, Mr. Famiglietti's beliefs are sufficient because within his scheme of things, are religious. It is not Plaintiff's burden to connect all the logical inferences, and describe in detail well known public facts, for the defense. The four corners of the Complaint are sufficient.

V. **DEFENDANTS INCORRECTLY CLAIM PLAINTIFF DID NOT FILE A COMPLAINT WITH THE EEOC WITHIN THE REQUISITE TIME FRAME.**

**A. Defendants improperly incorporate Plaintiff's EEOC Application.**

This Court should neither consider Plaintiffs documents submitted to the EEOC, nor give them any weight.   A "pleading is deemed to include any "written instrument" that is attached to it as 'an exhibit.'" Lynch v. City of New York et al., 952 F.3d 67, 79 [2d Cir. 2018], *see also*. (Fed R Civ P 10[c]). "Or is incorporated by reference" *id. citing* Cortec Industries Inc. V. Sum Holding LP., 949 F.2d 42 42, 47 [2d Cir. 1991]. Finally, if a document is not incorporated by reference, or attached as an exhibit then the court can still consider additional documents if the "plaintiff solely relies [on] [it] and [it] is integral to the complaint." Lynch *id.* A written instrument refers to a legal document defining the "rights duties entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate" Smith v. Hogan, 794 F.3d 249, 254 [2d Cir. 2015].

Here, the EEOC proceedings are separate and not dispositive.  Further, the documents are not incorporated by reference, nor attached as an exhibit(s). Finally, they are not written instruments within the meaning of Lynch, because they do not impose any legal obligations or establish the legal rights of parties. 952 F.3d 67 [2d Cir. 2018]. *Contra* L-7 Designs Inc. v. Old Navy, LLC, 647 F.3d 419 [2d Cir. 2011] (finding that contract properly part of the complaint for purposes of summary judgment in lawsuit alleging breach of contract) (cited by the defendants p 4 fn. 2).

16

### B. Plaintiff properly exhausted his administrative remedies within the requisite time.

Defendants waste four (4) pages making a frivolous argument. Defendant's state, in sum and substance, that it made up the date the statute of limitations began to run to be when the plaintiff was allegedly placed on leave without pay because Plaintiff did not allege the date of "final determination" in the complaint *see* (Def Mem. p7 fn.3). Defendants should be sanctioned pursuant to Fed. R. Civ. P. 11.

Defendants cite caselaw that clearly undercuts its entire alleged point (Def Mem. p 20). Defendants state that "[a] [party] is aggrieved once the agency has issued an unambiguously final decision that puts the petitioner on notice that all administrative appeals have been exhausted." Carter v. State, 95 N.Y.2d 267, 270 (N.Y. 2000) (internal citations omitted). The "'final and binding determination' from which the […] limitations period is measured . . . is the point when the challenged action has its impact." See Mundy v. Nassau County Civil Serv. Commn., 44 N.Y.2d 352, 357-58 (1978)."

Here, the final determination was the date DSNY terminated Mr. Famiglietti; which was APRIL 25, 2022 (Compl. ¶ 115). The date of the impact was when he was terminated. The date he was terminated is clearly the date of the adverse employment action. Plaintiff therefore timely filed a complaint with the EEOC. Moreover, Plaintiff timely commenced the instant action within ninety days of receiving the right to sue letter from the EEOC.

Here, the denial of his request for a religious accommodation meant that he would be terminated. *Contra* Groff v. DeJoy, 600 U.S.__, __ [2023] (denying religious accommodation required the plaintiff to work on the sabbath). For Mr. Famiglietti, the obvious impact of Defendants religious discrimination and failure to accommodate, was being terminated. Soon after the Citywide panel denied his appeal for a religious accommodation, he was terminated.

Defendants cite nine (9) cases in the context of CPLR article 78 proceedings that completely support Plaintiff and undercut its frivolous argument (Def Mem. p 8. Fn. 4). For instance, it leads with an unpublished opinion, Bath et al., v. FDNY, [U] [2023 N.Y. Misc. LEXIS 2744, at *4 [Sup. Ct. N.Y. Cnty, 2023] that held the administrative determination for one plaintiff was final when his appeal was decided, and the results were communicated to him. That court held that the other Plaintiff's claim was not justiciable because in part, no adverse employment action such as termination had occurred. Thus, under the caselaw Defendants cite the statute of limitations to file a charge with the EEOC began to run when he was terminated. Alternatively, it began to run when the denial of his appeal was communicated to him. Either way he clears the 300-day hurdle.

Furthermore, a claim under article 78 must be brought within four (4) months. Using Defendants backwards logic, potential plaintiffs would have no recourse to challenge being terminated if they appealed a denial of a religious accommodation request since the four months would lapse while the appeal was being decided. Clearly, Defendants are incorrect.

18

Even worse, Defendants know that Plaintiff's filed his complaint with the EEOC within 300 days from when the denial of his **appeal** to the city-wide committee was communicated to him. But Defendants abandon all ethical boundaries by pretending like that date does not exist. Accordingly, Defendants meritless claim regarding Plaintiff's failure to exhaust his administrative remedies is ridiculous, frivolous, and sanctionable. Much like its motion to dismiss.

<u>CONCLUSION</u>

Plaintiff concedes that DSNY is not an entity that Plaintiff can sue here and that the "claim of one" cause of action is not actionable here. However, Plaintiffs remaining causes of action are sufficiently plead, and Defendants have not even come close to demonstrating how Plaintiffs claims fail to state a cause of action.

Defendants literally selectively chose Plaintiff to be vaccinated out of eight million people because at best, he worked for the city and was worth less. Essentially, to Eric Adams, Plaintiff was disposable garbage. Just an average man. Dr. Chokshi was not mentioned by Defendants and therefore Plaintiff is not providing an argument where one does not exist.

Whereas great elites like Kyrie Irving were free to choose whether to get vaccinated because they made the big bucks for the City. Forcing a segment of the population to get vaccinated based on socioeconomic factors and all the alternative— improper motives—plead, surely equal discriminatory intent. Certainly, it demonstrates the plausibility of such.

Further, Plaintiffs claims under Title VII are sufficiently plead and Defendant has failed to show otherwise. Accordingly, Defendants motion to dismiss should be denied in its entirety.

Dated:        September 22, 2023
              Uniondale, New York

                              Respectfully Submitted,

                              _____
                              CHAD J. LAVEGLIA ESQ.,
                              LAW OFFICE OF CHAD J LAVEGLIA PLLC
                              626 RxR Plaza, Suite #613
                              Uniondale, NY 11556
                              (631) 450-2468
                              claveglia@cjllaw.org

20