UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROCCO FAMIGLIETTI,

                Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF SANITATION, CITY OF NEW YORK, ERIC ADAMS, and DAVID CHOKSHI,

                Defendants.

**MEMORANDUM AND ORDER**
1:23-CV-2754 (LDH) (VMS)

---

L<span>a</span>SHANN D<span>e</span>ARCY HALL, United States District Judge:

Plaintiff Rocco Famiglietti ("Plaintiff") brings the instant action against New York City Department of Sanitation,[1] the City of New York, Eric Adams, and David Chokshi ("Defendants") pursuant to 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment's Equal Protection Clause and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint in its entirety.

## BACKGROUND[2]

Plaintiff is a former sanitation worker who was employed with the New York City Department of Sanitation ("DSNY") from September 14, 2014, until his termination on April 25,

---

[1] Plaintiff concedes that New York City Department of Sanitation ("DSNY"), as a New York City agency, cannot be sued. (Pl.'s Opp'n., ECF No. 15, at 19); s*ee* N.Y. City Charter Ch. 17, § 396 ("[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law"); *see also Phillip v. Dep't of Sanitation*, No. 16-CV-2412 (MKB), 2019 WL 1004588, at *5 (E.D.N.Y. Feb. 28, 2019) (dismissing all claims against DSNY in light of Section 396). Accordingly, Plaintiff's claims against DSNY are dismissed.

[2] The following facts are taken from the complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

2022.  (Compl., ECF No. 1, ¶¶ 1, 9, 113.)  On or about, October 20, 2021, Defendant David Chokshi, former Commissioner of the New York City Department of Health and Mental Hygiene, issued a COVID-19 vaccine mandate ("the Vaccine Mandate"), ordering that "any City employee who failed to get vaccinated by October 29, 2021, would . . . be excluded from their workplace beginning on November 1, 2021."  (Compl. ¶¶ 5, 22–24.)  The Vaccine Mandate permitted workers to request medical and religious accommodations.  (*Id.* ¶ 24.)

On October 27, 2021, Plaintiff, who identifies as Catholic, requested a religious accommodation.  (*Id.* ¶¶ 72, 77.)  In his request, Plaintiff explained that he opposed the Vaccine Mandate because the vaccine "was produced using human cell lines derived from direct abortions," which conflicted with his conscience, guided by the Catechism of the Catholic Church.  (*Id.* ¶¶ 79, 247.)[3]  Plaintiff further explained that his conscience represents his direct connection with Jesus Christ.  (*Id.* ¶ 81.)  On November 2, 2021, Julie Cascino, an attorney with the DSNY Office of Equity, Diversity, and Inclusion, requested supplemental information regarding Plaintiff's objection to the consumption of medication produced through the use of fetal cells.  (*Id.* ¶¶ 83–84.)  Ms. Cascino also informed Plaintiff that "[t]he available mRNA vaccines (Moderna and Pfizer) do not require the use of any fetal cell lines in their production" and inquired whether Plaintiff declined to take commonly used medicines like ibuprofen that, unlike the COVID vaccine, "were tested or developed from cells that were derived from fetal cell lines."  (*Id.* ¶¶ 85–86.)  Ms. Cascino also invited Plaintiff to provide other supplemental information about his objection to the Vaccine Mandate, including how long Plaintiff had held his religious beliefs, or how the beliefs impacted Plaintiff's past medical decisions.  (*Id.* ¶ 87.)  In

---

[3] Plaintiff also alleges that getting the vaccine conflicted with his conscience, and that disobeying his conscience is disobeying Jesus Christ.  (*Id.* ¶ 82.)  However, Plaintiff does not clarify whether he conveyed this particular belief in his request for religious accommodation.

2

response, on November 4, 2021, Plaintiff reiterated the objections advanced in his original application, and emphasized that "forced inoculation was contrary to his conscience" and that he believed the Vaccine Mandate was unethical and unjust. (*Id.* ¶ 88.) On November 18, 2021, Plaintiff received a letter from DSNY stating that the information he provided to support his request did not sufficiently demonstrate a basis to grant his exemption. (*Id.* ¶ 90.) Accordingly, Plaintiff was required to comply with the Vaccine Mandate by November 21, 2021. (*Id.* ¶ 91.) He did not.

According to the Complaint, other DSNY workers were provided accommodations. (*Id.* ¶ 93.) Plaintiff also alleges that the Vaccine Mandate only applied to "City Workers," and that New York City Mayor Eric Adams did not enforce the Vaccine Mandate against private sector employees or New York City residents generally. (*Id.* ¶¶ 102–105.)

In April 2022, but at some point before April 25, 2022, DSNY demoted Plaintiff from supervisor to sanitation worker. (*Id.* ¶ 114.) On or about April 25, 2022, Plaintiff was terminated for failure to comply with the Vaccine Mandate. (*Id.* ¶ 113.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the

3

Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

## DISCUSSION

I. **Fourteenth Amendment Equal Protection Claim – Selective Enforcement**[4]

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution requires the government to treat all similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To plead a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must allege: (1) "[that he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (citation omitted). Conclusory allegations of selective treatment may not survive a motion to dismiss. *D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005), aff'd sub nom. *D.F. v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 180 F. App'x 232 (2d Cir. 2006) (citing *Albert v. Carovano*, 851 F.2d 561, 572, 573–74 (2d Cir. 1988). Indeed, to find that a complaint sufficiently states a claim, a court must determine that a jury could ultimately determine that the comparators are similarly situated based on the facts alleged. *DePrima v. City of New York Dep't of Educ.*, No. 12-CV-3626 MKB, 2014 WL 1155282, at *5 (E.D.N.Y. Mar. 20, 2014) (citation omitted).

---

[4] Plaintiff concedes his "class of one" Fourteenth Amendment claims. (Pl.'s Opp'n. at 19); *see Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605 (2008) (holding that "class of one" claims are not available in the context of public employment); *see also Sullivan v. City of Long Beach*, No. CV 22-1163 (DG)(AYS), 2023 WL 11872656 (dismissing a "class of one" discrimination claim where the case arose in the context of public employment). Accordingly, Plaintiff's "class of one" Fourteenth Amendment claims are dismissed.

Nonetheless, the appropriate inquiry at the motion to dismiss stage is whether "it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011). Indeed, even under the less stringent standard, "[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated [are] an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Bishop v. Best Buy, Co.*, No. 08–CV–8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 31, 2010) (citation and internal quotation marks omitted) (dismissing the plaintiff's equal protection claim because he failed to allege any similarly situated individuals who were treated differently).

Defendants argue that Plaintiff's selective enforcement claim must be dismissed because Plaintiff fails to allege any similarly situated comparators whom Defendants treated differently. The Court agrees. Plaintiff only alleges that "he is similarly situated with all human beings living, gathering, and working in . . . [New York] City" because "the [v]irus infects all human beings without distinction." (Compl. ¶¶ 139, 133; *see also id.* 134, 136 (same).) Such sweeping references to the millions of people living in New York City are precisely the kinds of conclusory allegations of selective treatment that the pleading standard proscribes. *See Bishop*, 2010 WL 4159566, at *11. Because Plaintiff has not pled that he is similarly situated to any person or specific group, the Court cannot assess whether Defendants treated him differently that they treated anyone else. Accordingly, Plaintiff's Equal Protection claim based on selective enforcement fails as a matter of law.

5

**II.      Title VII**

   **A.      Religious Discrimination**

Title VII makes it an unlawful for an employer to discriminate against an employee because of his or her religion. *Cosme v. Henderson*, 287 F.3d 152, 157 (2d Cir. 2002). Specifically, Title VII's provisions make it an unlawful to discriminate against any employee "'with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion,' or to 'limit, segregate or classify' an employee in a way that would 'adversely affect his status as an employee,' because of that employee's 'religion.'" *Id.* (citing 42 U.S.C. § 2000e–2(a)(2), § 703(a)(2)). Title VII thus requires a plaintiff asserting a discrimination claim to allege two elements: (1) that the employer discriminated against him[5] (2) because of his race, color, religion, sex, or national origin. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (citing 42 U.S.C. § 2000e–2(a)(1)).

Defendants argue that Plaintiff's discrimination claim is ripe for dismissal because Plaintiff fails to allege he was terminated because of his religious beliefs. The Court agrees. It is well-established that an inference of discriminatory motivation can arise from a variety of circumstances, such as "an employer's criticism of a plaintiff in degrading terms, invidious comments about others in the employee's protected class, more favorable treatment of employees not in the employee's protected class," or the sequence of events leading to the employee's discharge. *Freckleton v. Ambulnz NY LLC*, No. 21-CV-4615 (AMD) (LB), 2022 WL

---

[5] As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him, including termination of employment. *Vega*, 801 F.3d at 85. Defendants do not challenge that Plaintiff's termination constitutes an adverse employment action. (Defs.' Opp. at 15.) Accordingly, the Court finds that Plaintiff sufficiently pleads the first element.

4644673, at *4 (E.D.N.Y. Sept. 30, 2022) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)).

Plaintiff alleges nothing of the sort. Indeed, Plaintiff does not state a single fact giving rise to an inference that his religious beliefs were a "substantial" or "motivating" factor contributing to his termination. *See Vega*, 801 F.3d at 85. To the contrary, Plaintiff explicitly states that he was terminated for "not complying with the [COVID-19 Vaccine] Mandate" (Compl. ¶ 113), which was a condition of employment imposed across the private and public sector given the public health emergency presented by the coronavirus pandemic. Because Plaintiff fails to plead that his termination was motivated by discrimination, his Title VII claim for religious discrimination is dismissed.

**B.     Failure to Accommodate**

To establish a claim for failure to accommodate in violation of Title VII, a Plaintiff must show that he "(1) held a bona fide religious belief conflicting with an employment requirement; (2) informed employers of this belief; and (3) was disciplined for failure to comply with the conflicting employment requirement." *Baker v. Home Depot*, 445 F.3d 541, 546 (2d. Cir. 2006). Once the employee establishes a prima facie case, the employer "must offer [him or her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir.2002). Defendants argue that Plaintiff's failure to accommodate claim should be dismissed because he does not plausibly allege that his religious beliefs are sincerely held or that they conflict with the Vaccine Mandate. Not so.

As a threshold matter, the inquiry into the sincerity of a person's religious belief is a question of fact generally unsuitable to resolution at the motion to dismiss stage. *Gardner-*

7

*Alfred*, 651 F. Supp. 3d at 721 (citing *Patrick*, 745 F. 2d at 157).  In any event, Plaintiff has sufficiently alleged sincerely held religious beliefs that conflict with the Vaccine Mandate.  The assessment of whether a person's belief is religious is two-fold, as the Court must ascertain: (1) "whether the beliefs professed by a claimant are sincerely held and [2] whether they are, *in his own scheme of things*, religious."  *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 651 F. Supp. 3d 695, 720 (S.D.N.Y. 2023) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984) (emphasis added).  Beliefs that are in the plaintiff's "own scheme of things, 'religious'" include "impulses prompted by dictates of conscience as well as those engendered by divine commands."  *Patrick*, 745 F.2d at 158.

      Here, Plaintiff states that he is Catholic and that he opposed the Mandate because the vaccine was "produced using human cell lines derived from direct abortions," which his faith forbids.  (Compl. ¶¶ 5, 77,79; Pl.'s Opp'n, ECF No. 15, at 14.)  Plaintiff further states that he opposed the Mandate because getting vaccinated conflicted with his conscience, through which he believes Jesus Christ speaks to him.  (Compl. ¶¶ 81–82.)  Therefore, according to Plaintiff, complying with the Vaccine Mandate would mean disobeying Jesus Christ.  (Compl. ¶ 82.)

      In an attempt to undermine Plaintiff's failure to accommodate claim, Defendants insist that Plaintiff's convictions are merely "personal concerns" and "political beliefs" that are not entitled to Title VII protection.  (*See* Defs.' Mem. at 18–19.)  In support, Defendants direct the Court to state court cases adjudicating CPLR § 7803 (Article 78) petitions.  (*See* Defs.' Mem. at 19.)  In those cases, the courts were charged with determining whether various city agency denials of requests for religious accommodations from the Vaccine Mandate were "arbitrary and capricious."  *See, e.g.*, *Pierre v. Fire Dept. of the City of N.Y.*, (Art. 78), 2023 N.Y. Misc. LEXIS 1272 (Sup. Ct. N.Y. Cnty. Mar. 23, 2023), *6-7 (denying an Article 78 petition where the

8

petitioner objected to a vaccine "that has used stem cells from fetuses […] without any connection to a sincerely held religious belief" because the "request was based on [the petitioner's] personal preferences").[6]  Plainly, that line of cases has no bearing on whether Plaintiff's beliefs were religious for purposes of his Title VII claim.  And, the cases actually analyzing Title VII claims clearly state that a plaintiff's beliefs are religious so long as the plaintiff "in his own scheme of things" believes that they are.  *Patrick*, 745 F.2d at 157.  Plaintiff pleads that his beliefs are religious.  That is enough for now.  S*ee Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 508 (S.D.N.Y. 2023), aff'd, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) (concluding that similar allegations that the COVID-19 vaccine conflicted with plaintiff's Christian beliefs supported a prima facie Title VII employment religious discrimination claim); *see also Gardner-Alfred*, 651 F. Supp. 3d at 721–22 (concluding that similar beliefs conflicting with a COVID-19 vaccine requirement supported a prima facie Title VII religious discrimination claim).[7]

Defendants' argument that Plaintiff fails to allege that he was disciplined for failure to comply with the Vaccine Mandate is equally unavailing.  Specifically, Defendants argue that neither Plaintiff's placement on leave without parole nor ultimate termination constitutes discipline.  The Court disagrees.  Allegations of termination for failure to comply with an employment requirement are sufficient to plead discipline.  *See, e.g.*, *Zelnick v. Fashion Inst.*

---

[6] *See also Bath v. Fire Dept. of the City of N.Y.*, 2023 N.Y. Misc. LEXIS 2744 (Sup. Ct. N.Y. Cnty. Mar. 23, 2023) (same) (Defs.' Mem. at 19.)

[7] Defendants' attempt to distinguish Plaintiff's "conscience" from his religious belief is no more convincing, as both "impulses prompted by dictates of conscience as well as those engendered by divine commands are . . . safeguarded against secular intervention." *Patrick*, 745 F.2d at 158.  Plaintiff alleges a clear nexus between his Catholic beliefs and his refusal to take the vaccine.  Accordingly, Plaintiff satisfies the first element of a prima facie failure to accommodate claim.

9

*Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (termination qualifies as adverse employment action for purposes of Title VII claims); *see also Corrales v. Montefiore Med. Ctr.*, No. 22-cv-3219 (LAP), 2023 WL 2711415, at *5-6 (S.D.N.Y. Mar. 30, 2023) (finding prima facie case for failure to accommodate religious discrimination claim where plaintiff alleged that she had a bona fide religious belief that conflicted with the vaccine mandate, informed her employer of it, and was terminated). In arguing that Plaintiff's placement on leave without parole and subsequent termination were not disciplinary actions, Defendants again point the Court to cases that have no bearing on Title VII claims. Here, Defendants cite decisions on motions for preliminary injunction where plaintiffs alleged due process violations and the courts determined whether leave without pay or termination constituted discipline that would have prompted hearing requirements. *See, e.g.*, *Garland v. New York City Fire Dep't*, 574 F. Supp. 3d 120 (E.D.N.Y. 2021).[8] But the Second Circuit has clearly held that discipline, or adverse employment actions under Title VII's anti-discrimination provisions are generally characterized as "materially adverse change[s] in the terms and conditions of employment," including "termination of employment." *Bowles v. N.Y.C. Transit Auth.*, 285 F. App'x 812, 814 (2d Cir. 2008) (quoting *Zelnik v. Fashion Inst. Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)). Here, Plaintiff alleged that because he refused the COVID-19 vaccination, he was terminated on April 25, 2022. Thus, Plaintiff satisfies the third element of a prima facie case for failure to accommodate under Title VII.

---

[8] *See also Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299 (E.D.N.Y. 2022); *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 430 (S.D.N.Y. 2022); (Defs.' Mem. at 15.)

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint is GRANTED in part and DENIED in part.

SO ORDERED.

Dated: Brooklyn, New York
      October 28, 2024

/s/ LDH
L<small>A</small>SHANN D<small>E</small>ARCY HALL
United States District Judge