UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ROCCO FAMIGLIETTI,

Plaintiff,

—against—

NEW YORK CITY DEPARTMENT OF SANITATION, CITY OF NEW YORK, ERIC ADAMS, and DAVID CHOKSHI,

Defendants.
--------------------------------------------------------------x

No. 23-CV-02754 (LDH) (VMS)

**PLAINTIFF'S RULE 56.1 STATEMENT IN OPPOSITION**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, and Section III.A.6 of the Court's Individual Practice Rules, Plaintiff Rocco Famiglietti, respectfully submits this response to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts.[1]

## RESPONSES TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

1. Plaintiff was employed by Defendant City, and worked at New York City Department of Sanitation ("DSNY"), an agency of Defendant City, from September of 2014, until his employment was terminated on April 25, 2022. See Exhibit N, Famiglietti Depo. Tr., at 15:13.

[1] Citations to "Famiglietti Tr." refer to the transcript of the deposition of Plaintiff Rocco Famiglietti, taken August 25, 2025, (Defendant's Exhibit N). Citations to "David Tr." refer to the transcript of the deposition of Ryan David, taken August 15, 2025, (Defendant's Exhibit O). Lettered exhibit citations refer to the exhibits identified in Defendant's Rule 56.1 Statement.

**<u>Plaintiff's Response:</u>** Admit.

2. In March 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19, a virus, to the health and welfare of City residents. <u>See</u> Exhibit A, October 20, 2021 Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination for City Employees-Contractors-and Others (referred to herein as "COVID-19 Vaccine Mandate").

**<u>Plaintiff's Response:</u>** Admit that Emergency Executive Order No. 98 was issued in March 2020. However, Defendant's Exhibit A is not Emergency Executive Order No. 98 and does not itself establish the fact asserted.

3. On October 20, 2021, former Health Commissioner Chokshi issued the City Order requiring COVID-19 vaccinations for City employees and certain City contractors. Specifically, the City Order required that by 5:00 p.m. on October 29, 2021, City employees must provide proof to the agency or office where they work that: (1) they have been fully vaccinated against COVID-19; or (2) they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or (3) they have received the first dose of a two-dose COVID-19 vaccine. <u>See</u> Exhibit A, COVID-19 Vaccine Mandate.

**<u>Plaintiff's Response:</u>** Admit.

4. The City Order required that any City employee not providing the above-described proof must be excluded from their assigned work location beginning on November 1, 2021. <u>Id</u>. at 3 ¶¶ 2-3. In addition, the City Order specifically provided that

"Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law." Id. at ¶ 8.

**Plaintiff's Response:** Admit.

5. In response to the City Order, the City established procedures specific to requests for vaccination-related accommodations in an effort to address accommodation requests that would be made by City employees. See Exhibit O, Ryan David Depo. Tr., at 9:15-24.

**Plaintiff's Response:** Admit

6. On October 27, 2021, Plaintiff submitted a request for a religious exemption to the COVID-19 vaccine mandate via email to DSNY. See Exhibit. B, Email from Plaintiff to DSNY Entitled "Religious Accommodation Letter," dated October 27, 2021, bearing Bates stamp No. DEF000022.

**Plaintiff's Response:** Admit.

7. Plaintiff attached a religious exemption letter, dated October 26, 2021, to the email. See id.; see also Exhibit C, Religious Exemption Letter Signed by Plaintiff, dated October 26, 2021, bearing Bates stamp Nos. DEF000023-DEF000025.

**Plaintiff's Response:** Admit that Plaintiff attached a letter dated October 26, 2021, but clarify that the request was for a religious accommodation not an exemption.

8. In his religious exemption letter, Plaintiff self-identified as a Catholic, and stated "The Roman Catholic Church teaches that a person may be required to refuse a medical intervention, including a vaccination, if his or her informed conscience

comes to this sure judgment. . . . As a Catholic, I am morally against subjecting my body to a medical practice, such as this required immunization, as it is contradictory to obeying my conscience to faithfully make moral and ethical decisions that I know to be just and right." see also Exhibit C, Religious Exemption Letter Signed by Plaintiff, dated October 26, 2021, bearing Bates stamp Nos. DEF000023-DEF000025.

**Plaintiff's Response:** Admit that the October 26, 2021, letter contains the quoted statements. Plaintiff refers the Court to the full letter.

9. On November 2, 2021, Agency Attorney Julie Cascino at DSNY's Office of Equity, Diversity, & Inclusion, sent Plaintiff an email on behalf of DSNY, informing Plaintiff that based on the information that he provided, DSNY was requesting supplemental information to assist DSNY with making a determination as to his request. see Exhibit D, DSNY Email to Plaintiff Requesting Additional information, dated November 2, 2021, bearing Bates stamp Nos. DEF000026-DEF000027.

**Plaintiff's Response:** Admit.

10. The November 2, 2021 email to Plaintiff asked Plaintiff to provide additional information including information regarding how, in his own words, complying with the vaccination mandate will conflict with his sincerely held religious belief. See id. at DEF000026. This information may include how long he held this belief or how his belief has impacted other medical decisions he had made in the past. Id.

**Plaintiff's Response:** Admit that the November 2, 2021, email contained the described requests and respectfully refer the Court to the email for its full contents.

11. Plaintiff responded to DSNY's request for additional information on November 4, 2021 by sending an email with an attached letter. See Exhibit E, Plaintiff's Email to DSNY in Response to Request for Additional Information, dated November 4, 2021, bearing Bates stamp Nos. DEF000028-DEF000029; Exhibit F, Plaintiff's Religious Exemption 2 Letter, dated November 4, 2021, bearing Bates stamp Nos. DEF0000030-DEF0000031.

**Plaintiff's Response:** Admit.

12. In Plaintiff's November 4, 2021 letter, he failed to include the additional information DSNY asked him to provide to assist DSNY with making a determination. See Exhibit F, Plaintiff's Religious Exemption 2 Letter, dated November 4, 2021, bearing Bates stamp Nos. DEF0000030-DEF0000031.

**Plaintiff's Response:** Dispute. Plaintiff stated in the letter dated November 4, 2021—in pertinent part—that conscience is the vehicle through which humans perceive the divine law. Plaintiff asserted his belief that as a Catholic, God speaks to him through his conscience. Moreover, according to the Catechism of the Catholic Church "[m]an has the right to act in conscience and in freedom so as personally to make moral decisions." Plaintiff iterated that "[a]s a Catholic, I am morally against subjecting my body to a medical practice, such as this required immunization, as it is contradictory to obeying my conscience . . ." In addition, Plaintiff—as a sanitation

worker—had difficulty articulating his thoughts in writing and understanding the extent of the request for more information. (*See* Famiglietti Tr. 61:14 - 62:7).

13. Plaintiff stated in his November 4, 2021 letter to DSNY that "It is also against my belief, practice, and constitutional rights to be obligated to explain the reasons for personal and religious beliefs and values. See id.

**Plaintiff's Response:** Admit that the November 4, 2021, letter contains the quoted sentence and respectfully refer the Court to the letter for its full contents.

14. In an email sent to Plaintiff on November 18, 2021, DSNY notified Plaintiff that his accommodation requested was denied. See Exhibit G, DSNY's Denial Email, dated November 18, 2021, bearing Bates stamp No. RF0015Prod_1-RF0016Prod_1.

**Plaintiff's Response:** Admit.

15. The reason for the denial of Plaintiff's accommodation request was that Plaintiff had not provided sufficient support to serve as a basis for granting him an accommodation Id.

**Plaintiff's Response:** Dispute. Admit only that the November 18, 2021, denial email recited that Plaintiff had not provided sufficient support.

16. DSNY informed Plaintiff that he had three business days in which to appeal, either to a central Citywide or a private arbitration service. Id.

**Plaintiff's Response:** Admit.

17. Plaintiff submitted his appeal to the Citywide Panel on November 22, 2021. See Exhibit H, Email to Plaintiff Confirming Receipt of Appeal, dated November 22, 2021, bearing Bates stamp No. DEF0000036.

**Plaintiff's Response:** Admit.

18. On January 12, 2022, Plaintiff was notified by DSNY, via email, that "the City of New York Reasonable Accommodation Appeals Panel denied his appeal for a religious exemption. See Exhibit I, Email to Plaintiff, dated January 12, 2022 Regarding Denial of Plaintiff's Appeal, bearing Bates Stamp Nos. DEF0000039.

**Plaintiff's Response:** Admit that on January 12, 2022, Plaintiff was notified by email that the Citywide Panel denied his appeal. The notification provided no reasons and no individualized explanation for the Panel's denial. (*See* Def. Ex. I).

19. Plaintiff was notified via the January 12, 2022 email that he was required to submit proof of COVID-19 vaccination no later than January 18, 2022, otherwise he would be placed on leave without pay status until he provided proof of COVID-19 vaccination. Id.

**Plaintiff's Response:** Admit.

20. On January 14, 2022, Plaintiff responded to the January 12, 2022 email and stated that he had recently tested positive for COVID-19 on December 24, 2021, and that he was instructed by the DSNY coronavirus hotline that he did not need to submit to weekly testing or be vaccinated for 90 days, which would be March 24, 2022. See Exhibit J, Email Exchange Between DSNY and Plaintiff Regarding Plaintiff's

Request, dated January 12, 2022 through January 18, 2022, bearing Bates Stamp Nos. DEF0000040-DEF0000042.

**Plaintiff's Response:** Admit.

21. DSNY advised Plaintiff that although he had a 90-day testing exemption, per the current CDC guidance, it was not necessary to wait 90 days after a positive COVID case to safely receive the vaccine. See id., DEF0000040.

**Plaintiff's Response:** Admit that DSNY's email stated so. Plaintiff's primary care physician advised him against receiving the COVID-19 vaccine for at least 90 days following his positive infection, and DSNY thereafter accepted his physician's note and granted an extension on that basis. (*See* Famiglietti Tr. 52:18-53:5).

22. DSNY further advised Plaintiff that he must still provide proof of vaccination by January 18, 2022, and if not, then he would be placed on Leave Without Pay status. Id.

**Plaintiff's Response:** Admit.

23. On January 23, 2022, Plaintiff emailed DSNY and informed them that his primary care physician advised him against receiving the COVID-19 vaccine for at least 90 days post positive infection. See Exhibit K, Email Exchange Between DSNY and Plaintiff Regarding His COVID-19 Diagnosis and Temporary Extension, dated January 12, 2022 through January 24, 2022, bearing Bates Stamp Nos. DEF0000043-DEF0000047.

**Plaintiff's Response:** Admit.

24. On Monday, January 24, 2022, DSNY informed Plaintiff, via email, that in accordance with the doctor's note that Plaintiff sent to DSNY, DSNY was granting him an extension of the time required to submit proof of COVID-19 vaccination. See id., Bates Stamp Nos. DEF0000043.

**Plaintiff's Response:** Admit.

25. DSNY also informed Plaintiff that it would permit Plaintiff to work through the new submission deadline. Id.

**Plaintiff's Response:** Admit.

26. DSNY informed Plaintiff that he must submit proof of COVID-19 vaccination no later than Sunday, April 3, 2022, and that if he did not submit proof of vaccination by that date, then he would be placed on Leave Without Pay status until he provided proof of vaccination. Id.

**Plaintiff's Response:** Admit.

27. On April 18, 2002, DSNY emailed Plaintiff to advise him that following the denial of his appeal request for an exemption from the COVID-19 vaccination, any internal administrative remedies afforded to him by the NYC Reasonable Accommodation process had been exhausted. See Exhibit L, Email to Plaintiff Regarding Expiration of Temporary Medical Exemption and Possible Termination, dated April 18, 2022, bearing Bates Stamp No. DEF0000049.

**Plaintiff's Response:** Admit that on April 18, 2022, DSNY emailed Plaintiff.

28. DSNY informed Plaintiff that because he still had not provided proof of COVID-19 vaccination, his employment would be terminated on April 25, 2025. Id.

**Plaintiff's Response:** Admit

29. On April 25, 2022, DSNY sent Plaintiff a letter informing him that his employment was terminated because he did not submit proof of COVID-19 vaccination. See Exhibit M, Letter to Plaintiff dated April 25, 2022 Regarding Termination of Employment Effective April 25, 2022, bearing Bates Stamp No. DEF0000051.

**Plaintiff's Response:** Admit but do not concede that the letter was sent on April 25, 2022.

30. On January 22, 2023, Plaintiff filed a charge of discrimination with the United States Equal Opportunity Commission. See Exhibit P, Plaintiff's EEOC Charge of Discrimination, dated January 22, 2023, bearing Bates Stamp Nos. RF_0044_Prod1 RF_0045_Prod1.

**Plaintiff's Response:** Admit. The EEOC issued Plaintiff a Notice of Right to Sue letter on February 6, 2023, and this action was commenced on April 12, 2023. (*See* Famiglietti Tr. 32:1, 48:2-3).

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

Pursuant to Local Civil Rule 56.1(b) and Section III.A.6(e) of the Court's Individual Practice Rules, Plaintiff submits the following additional material facts.

31. Plaintiff worked for DSNY for approximately seven and one-half years, beginning as a sanitation worker in September 2014. (*See* Famiglietti Tr. 15:1-3, 17:5-14.)

32. In April 2021, after taking a competitive civil service examination and scoring well, Plaintiff was promoted to Supervisor, a position in which he oversaw routes, workers, and garage operations. (*See* Famiglietti Tr. 25:1-25, 26:1-14.)

33. During his employment with DSNY, Plaintiff was never suspended, never had charges and specifications issued against him, and never had an EEO complaint filed against him. (*See* Famiglietti Tr. 29:8-25.)

34. Plaintiff is a lifelong, practicing Catholic. (*See* Famiglietti Tr. 12:6, 43:18-45:16.)

35. Plaintiff's request for a religious accommodation stated in pertinent part that "the Catechism of the Catholic Church instructs that following one's conscience is following Christ himself. . . It is by the judgment of his conscience that man perceives and recognizes the prescriptions of the divine law. . .Conscience is a messenger of him, who, both in nature and in grace, speaks to us behind a veil, and teaches and rules us by his representatives. Conscience is the aboriginal Vicar of Christ. Therefore, if a Catholic comes to an informed and sure judgment in conscience that he or she should not receive a vaccine, then the Catholic Church requires that the person follow this certain judgment of conscience and refuse the vaccine. . .As a Catholic, [Plaintiff] [is] morally against subjecting [his] body to . . .this required immunization, as it is contradictory to obeying [his] conscience to faithfully make moral and ethical decisions that [he] know[s] to be just and right." (*See* Def. Ex. C).

36. Plaintiff holds a sincere religious belief that receiving the COVID-19 vaccine would violate his faith, violate his conscience, and sever his "direct line to God,"

and that he is religiously obligated to obey the certain judgment of his conscience. (*See* Famiglietti Tr. 34:22-35:20, 40:22-41:9.)

37. In addition, Plaintiff stated in his request for a religious accommodation that "[t]here is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells [*sic*] lines derived from direct abortions. It is permissible to use such vaccines only under certain case-specific conditions, based on a judgment of conscience." (*See* Def. Ex. C).

38. Plaintiff also objected to the COVID-19 vaccines because he believed that fetal cells from abortions were involved in their production, which conflicted with his Catholic beliefs opposing abortion. (*See* Famiglietti Tr. 36:8-15, 37:5-16.)

39. Ryan David, DSNY's then-Director of the Office of Equity, Diversity, and Inclusion, personally reviewed and made the final determination on every religious exemption request submitted to DSNY, including Plaintiff's. (*See* David Tr. 18:7-25, 19:6-15, 38: 9-20).

40. There is no evidence that Defendant offered Plaintiff any accommodation whatsoever (Defs Ex. G, I).

41. Mr. David acknowledged that, to his understanding, the Johnson & Johnson vaccine used fetal cell lines in its production and manufacturing, and that Moderna and Pfizer used fetal cell lines early on to test efficacy. (*See* David Tr. 29:7-14.)

42. DSNY received approximately 1,100 religious exemption requests in connection with the COVID-19 Vaccine Mandate, of which approximately 300 were granted. (*See* David Tr. 13:20-24, 19:1-5.)

43. Under the standard DSNY applied, an employee who demonstrated a sincerely held religious belief that conflicted with receiving the COVID-19 vaccine would be exempted from the vaccination requirement. (*See* David Tr. 11:4-17.)

44. David has no independent recollection of reviewing Plaintiff's accommodation request or of the reasons for its denial. (*See* David Tr. 25:1-26:5, 47:2-9.)

45. Neither the November 18, 2021, denial nor the January 12, 2022, Citywide Panel denial identified any undue hardship to DSNY or the City, nor any burden that exempting Plaintiff would have imposed on DSNY's operations. (*See* Def. Exs. G, I.)

46. Employees who submitted timely exemption requests, including Plaintiff, were permitted to continue working while their requests were under review, subject to weekly COVID-19 testing. (*See* David Tr. 26:15-27:8.)

47. Plaintiff continued to perform his supervisor duties while unvaccinated from the issuance of the Vaccine Mandate through January 19, 2022, and again from on or about January 24, 2022 through April 3, 2022, complying with weekly COVID-19 testing throughout. (*See* Famiglietti Tr. 42: 6-17, 51:24-53:15; Def. Ex. K).

48. On April 4, 2022, following the expiration of his medical extension, Plaintiff again reported to work in full uniform and signed in, and was again sent home and placed on leave without pay. (*See* Famiglietti Tr. 53:8-15.)

49. DSNY terminated Plaintiff's employment on April 25, 2022; the sole stated reason was his failure to submit proof of COVID-19 vaccination. (*See* Famiglietti Tr. 42:18-22; Ex. M).

50. In 2021, his final full year at DSNY, Plaintiff earned approximately $138,000 to $140,000, with full health, dental, and vision benefits, a deferred compensation plan, and a City annuity. (*See* Famiglietti Tr. 27:1-29:7).

51. Following his termination, Plaintiff's health benefits ended, and his annual income fell to approximately $10,000 to $15,000. (*See* Famiglietti Tr. 70:18-71:17, 24:11-15).

52. As a result of his termination, Plaintiff suffered emotional distress, strained family and social relationships, and stress for which he attended therapy for approximately one year. (*See* Famiglietti Tr. 66:20-71:17, 75:20-25.)

Dated: Hauppauge, New York
July 22, 2026

Respectfully submitted,

Chad J. LaVeglia

LAW OFFICE OF CHAD J. LAVEGLIA PLLC
Chad J. LaVeglia, Esq.
Attorney for Plaintiff
350 Motor Parkway, Suite 308
Hauppauge, NY 11788
(631) 333-8478
claveglia@cjllaw.com