U.S. DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

---

ROCCO FAMIGIEPTI,

Plaintiff,

v. Case No.

CITY OF NEW YORK, NEW YORK CITY 23cv02754

DEPARTMENT OF SANITATION (DSNY), 1:2023cv02754

ERIC ADAMS, and DAVID CHOKSHI,

Defendants.

---

DEPOSITION OF RYAN DAVID

DATE: Friday, August 15, 2025

TIME: 10:03 a.m.

LOCATION: Remote Proceeding

New York City Department of

Sanitation (DSNY)

375 Pearl Street, 18th Floor

New York, NY 10038

REPORTED BY: Wayne John-Baptiste Jr.

JOB NO.: 7547770

DEFENDANT'S EXHIBIT

O

A P P E A R A N C E S

ON BEHALF OF PLAINTIFF ROCCO FAMIGIEPTI:

CHAD J. LAVEGLIA, ESQUIRE (by videoconference)
Law Office of Chad J. LaVeglia PLLC
350 Motor Parkway, Suite 308
Hauppauge, NY 11788
claveglia@cjllaw.org
(631) 450-2468

ON BEHALF OF DEFENDANTS CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF SANITATION (DSNY), ERIC ADAMS, AND DAVID CHOKSHI:

KATHLEEN LINNANE , ESQUIRE (by videoconference)
New York City Law Department
100 Church St
New York, NY 10007
klinnane@law.nyc.gov
(212) 356-1000

I N D E X


| EXAMINATION: | | PAGE |
|---|---|---|
| By Mr. LaVeglia | | 7 |


E X H I B I T S


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Plaintiff: | | |
| Exhibit 1 | Initial Religious Exemption Request, 10/26/21 | 34 |
| Exhibit 2 | Decision for Request for Religious Exemption, 11/18/21 | 34 |
| Exhibit 3 | DSNY Email to Plaintiff Requesting Additional Information, 11/02/21 | 37 |

R. DAVID

THE REPORTER: My name is Wayne John-Baptiste, and I'm the reporter assigned by Veritext to take the record of this proceeding today. We're going to be going on the record as of 10:03 a.m.

And this is the deposition of Mr. David Ryan, and this is taken in the matter of Rocco Famigiepti vs. the City of New York, New York City Department of Sanitation, Eric Adams, and David Chokshi. Today is Friday. It's August 15, 2025. We're doing this remote via Zoom.

I'm a notary authorized to take acknowledgements and administer oaths in New York State. Parties agree I'll swear in the witness remotely.

Additionally, absent an objection on the record before the witness is sworn, all parties and the witness understand and agree that any certified transcript produced from the recording of this proceeding:

- is intended for all uses permitted under applicable procedural and

evidentiary rules and laws in the same manner as a deposition recorded by stenographic means; and

- shall constitute written stipulation of such.

At this time, can I have each of you just state your identities one by one for the record, please --

MS. LINNANE: Mr. John-Baptiste, I just wanted -- it's Ryan David, not David Ryan.

THE REPORTER: Okay. David Ryan. I got you.

MS. LINNANE: Thank you.

MR. LAVEGLIA: Ryan David.

THE REPORTER: Ryan David. Got you. Let me switch that around here. All right. Thank you so much. Go ahead and introduce yourselves, Counsel.

MR. LAVEGLIA: Chad LaVeglia; L-A-V-E-G-L-I-A. I'm the attorney for Plaintiff Rocco Famigiepti.

THE REPORTER: Kathleen Linnane, Corp. Counsel for Defendants.

R. DAVID

MR. DAVID: Ryan David, Executive Director of the Office of Equity -- of Equal Employment Opportunity and Workplace Violence Prevention for the Department of Sanitation.

THE REPORTER: Thank you guys so much. Hearing no objections, I'll swear in the witness.

Mr. David, just raise your right hand for us.

WHEREUPON,

RYAN DAVID,

called as a witness and having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

THE REPORTER: Thank you so much. You could place your hand down. And can you give us the address of where you're taking the deposition today?

THE WITNESS: Yes. 375 Pearl Street, P-E-A-R-L, 18th floor, New York, New York 10038.

THE REPORTER: Thank you so much.

R. DAVID

And Counselor, you are free to begin.

MR. LAVEGLIA: All right. Thank you.

EXAMINATION

BY MR. LAVEGLIA:

Q Good morning, Mr. David. My name --

A Good Morning.

Q My name is Chad LaVeglia. I represent Rocco Famigiepti, who is the plaintiff in this action. I'm just going to ask you some questions. If you don't know the answer, please say you don't know the answer. I don't want you to speculate or guess.

And if you need to take a break, let us know, and we'll do that accordingly. Also, if you don't understand my question, please let me know, and I'll try to rephrase it the best I can. Okay?

A Understood. Thank you.

Q All right. Thank you. So, Mr. David, what is your current position?

A I am the executive director for

R. DAVID

the Office of Equal Employment Opportunity and Workplace Violence Prevention.

Q And when did you become the executive director?

A June of this year.

Q Congratulations.

A Thank you.

Q You're welcome. What position did you hold prior to that?

A I was the director for the Office of Equity, Diversity, and Inclusion.

Q How long were you the director of the Office of Equity, Diversity, and Inclusion?

A From January of 2020 until my promotion in June of this year.

Q Okay. And are you a lawyer?

A Yes.

Q All right. So in around November of 2021, you were director of OEDI; right?

A Correct.

Q And can you please discuss what

R. DAVID

some of your responsibilities were in that position?

A As director of O-E-D-I, I was tasked with overseeing all internal complaints of discrimination and harassment, which would -- you know, suspected violations of the City's EEO policy.

I also oversaw the processing of employee requests for reasonable accommodations. I also oversaw all EEO related trainings for employees, and I also sat on various employment boards.

Q Okay. So focusing specifically on requests for accommodations in the context of the COVID-19 pandemic, can you please describe what your role was there?

A So, you know, you used the term "accommodations." There was an exemption process that the City had permitted. So I oversaw the exemption process for all exemption requests made by DSNY employees to OEDI.

Q Okay. So in your role with the

R. DAVID
exemption process, when you say you "oversaw," does that mean you actually reviewed every request, or you oversaw other employees, combination, or something to that effect?
A Combination of both.
Q All right. Can you talk about what the policy was for exemptions?
MS. LINNANE: Objection.
You can answer.
THE WITNESS: The policy, from what I can recall at the time, is that employees of City agencies were permitted to make exemption requests, either for medical reasons or for religious reasons.
BY MR. LAVEGLIA:
Q And what type of exemption would be granted for employees, or what was allowed?
A Are you --
MS. LINNANE: Objection.
THE WITNESS: Are you talking specifically for religious?
//

R. DAVID

BY MR. LAVEGLIA:

Q Yes.

A If an employee -- an employee would be able to demonstrate that they had a sincerely held religious belief that conflicted with getting the COVID-19 vaccine.

Q Okay. And so, if they demonstrated that they had a sincerely held religious belief that conflicted with the vaccine, then they would be exempted from having to take the vaccine. Is that correct?

MS. LINNANE: Objection.

You can answer.

THE WITNESS: Yes.

BY MR. LAVEGLIA:

Q What criteria were you using to determine whether an individual had a sincerely held religious belief?

A Well, the first part of that is that we would have to, in assessing -- again, it has to be religious in nature. So if someone had come to us with non-

religious views as the basis for the request, the request would be denied.

But as far as we're looking for is, were they able to demonstrate that they had a religious belief that -- and that's the reason why they couldn't get the vaccine.

And then, also, if they were able to demonstrate sincerity of their request, as well, that they truly believed -- that they truly had a religious belief that conflicted with getting the vaccine.

Q So, in general, how did you determine from the four corners of the documents whether a belief was sincerely held or not?

A This was all documented. So the employee would submit their -- they would email their submission to our office, we would review it, and then, we would follow up with additional questions if we had -- if we felt it necessary to gather additional information before making a

R. DAVID

determination.

Q Okay. And what, if any, written policies did the agency or the City provide you to determine?

MS. LINNANE: Objection.

You can answer.

THE WITNESS: From what I recall, that we have the Department of Citywide Administrative Services, short for DCAS, and Law Department. They had held virtual meetings with all the City's EEO officers who were tasked with reviewing exemptions, as far as how they should be reviewing these cases.

BY MR. LAVEGLIA:

Q Okay. I'm assuming you went to those sessions and training; right?

A Correct.

Q About how many requests for religious accommodations did you have to review or oversee for the COVID-19 pandemic?

A About 1,100.

Q Wow. And who else -- what other

staff or employees were responsible for reading over these requests besides yourself?

MS. LINNANE: Objection.

You can answer.

THE WITNESS: We had about four. We had -- give me one second. I just need to add up.

BY MR. LAVEGLIA:

Q Okay.

A We had myself and two others, which was, at the time, OEDI. So that's three. And we also had some attorneys from our Bureau of Legal Affairs assist, as well. I believe it was six or seven. About ten employees.

Q Okay.

MS. LINNANE: Mr. David, can you just clarify for the record what you mean when you say "OEDI," so we're all of the same understanding.

Sorry, Chad.

MR. LAVEGLIA: That's okay.

THE WITNESS: So --

R. DAVID

MS. LINNANE: I just want to make sure we know what we're talking about here.

MR. LAVEGLIA: Yeah. Of course.

THE WITNESS: So to be -- so to be clear here, I'm the executive director of EEO and Workplace Violence Prevention. EEO was essentially what was formerly now called OEDI. The EE -- yeah. So when I say "OEDI," it's just -- now, it's called our EEO unit.

But, again, OEDI, meaning that if you worked in OEDI, you were tasked with processing employee requests for reasonable accommodations, processing exemption requests, also investigating complaints of discrimination and harassment.

So even in my new promotional title, I'm doing the same thing that I was doing while at -- while at -- the office was OEDI. Now, I just have another investigative arm that I'm overseeing, as well.

R. DAVID

BY MR. LAVEGLIA:

Q Okay. Thank you for clarifying. So since there were a lot of requests and a lot of employees working on it, was there a standardized system to track who reviewed what?

A Yes.

Q Okay. Can you discuss what that system was and how it worked?

A Yes.

THE WITNESS: I -- I do hear, I think, a dog barking in the background --

MR. LAVEGLIA: Yeah. Let me try to -- it's not my dog. It's my neighbor's, but I will try to fix that. One second, please.

THE WITNESS: No worries.

THE REPORTER: All right. Off record. 10:13.

(Off the record.)

THE REPORTER: All right. I'm going to go back on record. 10:15.

MR. LAVEGLIA: I completely forgot my last question.

R. DAVID

THE WITNESS: So did I.

MR. LAVEGLIA: Can we have a read back? Thank you.

(The reporter repeated the record as requested.)

THE WITNESS: Okay. As I said, we had about ten reviewers. Each person was tasked with their -- given a -- given their own caseload to review, 'cause again, we had 1,100 requests for religion. So we broke it up that way.

BY MR. LAVEGLIA:

Q Okay. So how would these requests be processed once they were assigned to an individual?

A The employee would make a request through email, and then, from there, what we would do is that we would assign it a reviewer, as far as a caseload.

And then, the reviewer would be tasked with reviewing the initial request and then asking -- requests for additional information, if deemed necessary.

R. DAVID

Q Okay. I guess I'm trying to just understand; once the reviewer looked over everything and made a determination, can you describe what that process was afterwards?

A They would make a recommendation as whether or not the -- the employee's request for an exemption would be -- should be approved or denied.

Q Who would they make that recommendation to?

A To me.

Q So every single reviewer would make a recommendation to you?

A Correct.

Q Okay. And then, what did you do once you received the recommendation?

A I would review the request myself, and then, I would make a final determination.

Q Okay. So it's fair to say that every single one of those 1,100 requests, you had to review at some point; right?

A Yes.

R. DAVID

Q Okay. And based on your review, how many exemption requests did you grant?

A Out of the 1,100, this is not approximate, but I would say about 300.

Q Okay. At a certain point in time, around November 2021, did you review a request from Rocco Famigiepti?

A Yes.

Q Okay. And you denied his request for an accommodation; right?

MS. LINNANE: Objection.

You can answer.

THE WITNESS: His -- his request for an exemption was denied.

BY MR. LAVEGLIA:

Q Yes. Sorry. I'm using accommodation and exemption interchangeably, so I'll try to stick to the exemption verbiage. All right?

Based on Mr. Famigiepti's religious basis -- or terrible question. Withdrawn. What about Mr. Famigiepti's request -- or why was it -- withdrawn. Why was it denied?

R. DAVID

A Are you able to -- I don't know if I -- I -- can I look at a copy of it in front of me, or can you share your screen?

MR. LAVEGLIA: Yeah.

Mr. John-Baptiste, can I email you some documents, or should I put it in the chat? What's the best way to --

THE REPORTER: Email, just 'cause I don't know if the chat will do it properly.

MR. LAVEGLIA: All right. Can we please have your email address?

THE REPORTER: Yeah. It's right in my name. It's my first name, Wayne.

MR. LAVEGLIA: Okay.

THE REPORTER: And B-J-R 27 at Gmail.

MR. LAVEGLIA: Okay. Just emailing you now.

THE REPORTER: No problem.

MR. LAVEGLIA: Just let me know when you get it, and I can just quickly walk you through.

And, Kathleen, this is all stuff that was turned over in discovery, so just --

MS. LINNANE: Sure. Yeah.
MR. LAVEGLIA: Three documents.
MS. LINNANE: Yep. Perfect.
THE REPORTER: All right. I'm downloading it now. All right. It should be up. Let me know if you need me to customize it --
MR. LAVEGLIA: Yeah. So we could please just go to the third document. It's starts off with "to whom it may concern." Yeah; right there.
MS. LINNANE: And let's just get -- it's hard to see. It's a little blurry.
MR. LAVEGLIA: It is.
MS. LINNANE: Just the Bates numbers on the bottom for me, Chad, so I can just write it down?
MR. LAVEGLIA: Oh. Yeah. The Bates number is RF0003.
THE REPORTER: Okay. Cool. Thanks.
MR. LAVEGLIA: You're welcome.
BY MR. LAVEGLIA:
Q All right. Mr. David, if you could please review this when --

R. DAVID

A Do -- do you mind if I start -- because this -- the one -- this is on -- dated November 4th. This was the response to the request for additional information. Can I -- do you mind if I start with the initial submission?

Q Not at all. I just have to find it from here. Just one second.

A And do you want me to only read this from here, or do you mind if -- 'cause I do have copies. I mean, I can look at it myself in front of me, but --

Q If you have copies, I think that would be better, if you don't mind --

A Okay. No. No. I don't -- I don't want you to -- okay.

Q Sorry to slow us up here. Should have had this --

A So the one that I have is -- the initial submission was October 26, 2021. That's what's the --

Q Yes.

A -- on the date?

Q Yes. Correct. I have that in

front of me now.

A Okay.

Q If you --

A Do you want to bring it up on here?

Q Yeah. I will.

MR. LAVEGLIA: I will email this to you, Mr. Baptiste, as well.

MS. LINNANE: So, Ryan, this is just -- I just want to make sure this is the only thing that you have in front of you; right?

THE WITNESS: Yes.

MS. LINNANE: Just for the purposes of this particular line of questioning, it's the letter dated October 26, 2021; correct?

MR. LAVEGLIA: Yes.

THE WITNESS: Correct.

MS. LINNANE: Okay.

MR. LAVEGLIA: Okay. I'm emailing it as we speak. I apologize. I should have had this ready.

MS. LINNANE: It's okay.

R. DAVID

MR. LAVEGLIA: Okay. I just send it to you, Mr. John-Baptiste.

THE REPORTER: All right. No problem.

MR. LAVEGLIA: Thank you.

THE REPORTER: All right. I'm downloading it now. Okay. It should be up -- coming up. All right. All set, Counsel.

MR. LAVEGLIA: Okay. Thank you.

BY MR. LAVEGLIA:

Q Can you see that, Mr. David?

A Yes.

MR. LAVEGLIA: And just for the record, it's Bates stamped RF 003-26A and RF004-26A.

This is from the initial disclosures, Kathleen.

MS. LINNANE: Okay. Thanks.

MR. LAVEGLIA: Sure.

BY MR. LAVEGLIA:

Q So, Mr. David, what's in front of you; do you recognize that document?

A Yes.

R. DAVID

Q Okay. And do you recognize it to be Mr. Famigiepti's original submission for an exemption?

A Yes. It was his initial submission to our office.

Q That's dated October 26, 2021; right?

A Yes. But just to -- it was not received on October 26th. It was received on October 27th.

Q Okay. Thank you. If you could please take your time, read it over, and when you're done, let me know.

A I'm prepared to talk about it now.

Q Okay. Great. So can you specifically identify what about his grounds were not sufficient?

MS. LINNANE: Objection.

But you can answer.

THE WITNESS: One thing I just want to make clear is, I had said that I had reviewed 1,100 of these. So I don't have an independent recollection as far as when

R. DAVID

I was -- while I was reviewing it at the time, but I am prepared -- I can talk about it as far as, you know, reviewing it now.

BY MR. LAVEGLIA:

Q Okay. Sure. Please -- yeah -- do your best.

A So, again, what's the standard that we're working with here? As far as, you know, an employee needs to be able to demonstrate that they have a sincerely held religious belief that conflicts with getting the COVID-19 vaccine.

So in reviewing this initial submission, there's a few things that stick out to me. First, is the timing of the submission. It's dated October 26th. It was received by our office October 27, 2021. Why is that important? October 27th was the last day an employee could submit a timely exemption to our office.

Again, why is that important? If they did not submit a timely -- if -- if they -- let me -- if they submitted a

R. DAVID

timely exemption, they were permitted to continue to be able to work while their request was under review, with the understanding that they would continue to submit weekly testing.

So we -- first and foremost, we received this the last day it was due. Second point is that this is a template. I'm sure I knew this while I was reviewing it, because you can point -- point them out.

And, again, having reviewed 1,100 of these, a lot of what he submitted, other than in the first paragraph, putting in his name and reference number, and then, also, I believe it was the last -- can you scroll down for me real quick, if you don't mind?

Where it says, "As a Catholic, I am morally against subjecting my body to a medical practice," all the way to the end, that's the only unique piece of writing that he actually wrote himself.

So, again, it's factors that we

R. DAVID

take into consideration. That's not in of itself dispositive as far as where we're going to go ahead and we're going to deny it, but those are just for me as far as things to consider.

Now, if you don't mind scrolling back up. We received -- in reading this, "teaching -- teachings that may lead individual Catholics, including me, Rocco Famigiepti, to decline certain vaccines --" it's kind of unsure to me whether or not everything that he's saying applies to him directly, or if this is just generally speaking as far as, you know, providing information to our office.

But even if you give him the benefit of the doubt, if you look there at the second bullet, where it says, "There is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cell lines derived from direct abortions.

"It is permissible to use such vaccines only under certain case specific

conditions based on a judgment of conscience."

Now, the one thing that's interesting -- and -- and again, I'm not a pharmaceutical professional or a doctor, but you had Johnson & Johnson vaccine, and also, Moderna, and Pfizer.

Johnson & Johnson, to my understanding, had used fetal cell lines in the production and manufacturing. Moderna and Pfizer did not. They used fetal cell lines early on to test the efficacy.

So does this actually conflict, if he was to get the Moderna or Pfizer vaccine, with his religious objection? Does he even know that information? I don't know, at least at this stage with the initial submission.

And also, based on this, it's interesting that he's not outright refusing, saying that he wouldn't get a vaccine. He's indicating that it's case specific.

R. DAVID

Again, we're using a template here, and he doesn't elaborate at all, so it's just information that, in my opinion -- as far as insufficient, just trying to get a better understanding.

I have a few more, if you want me to go through.

Q Yes, please.

A Okay. Now, if we go down to the next one, the third bullet, "A person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Catholic moral teachings."

If you don't mind scrolling down, he unpacks it a little bit in the paragraph below. If you can just scroll down a little bit.

In the middle of it, where it says, "Therapeutic proportionality is an assessment of whether the benefits of a medical intervention outweigh the undesirable side effects and burdens in light of the integral good of the person,

R. DAVID

including spiritual, psychological, and bodily goods."

Again, this is a template that he had used. All right? Even this part of it, it's a template. He doesn't go on to explain it all in any way, as far as that how, you know, his interpretation and how, you know, this personally deals with him, as far as, like, how does he even actually balance any of this.

When I'm looking about -- again, this is a vaccine that was approved as safe and effective by the FDA. He doesn't talk about any of the undesirable side effects and how it would outweigh him and affect him from a religious perspective.

So, again, that's just information that's, you know, missing, in my opinion. And also, in that last paragraph, where he mentions, you know, that "the potential recipient of the intervention in the concrete --" let me read the whole sentence.

"The judgment of therapeutic

R. DAVID

proportionality must be made by the person who is the potential recipient of the intervention in the concrete circumstances, not by public health authorities or by other individuals who might judge differently in their own situations."

Again, me reading this, it looks like it could be potentially non-religious views, as far as public distrust to our -- distrust towards our public health authorities. Again, just another factor as far as when we review this. Something that -- you know, point of consideration.

If you don't mind scrolling down to the very last paragraph. And, again, we're working with a template here. And the last paragraph I find important, because it's the only piece of unique writing that he actually includes as part of his submission.

And he writes, "As a Catholic, I am morally against subjecting my body to a medical practice, such as this required

R. DAVID

immunization, as it is contradictory to obeying my conscience to faithfully make moral and ethical decisions that I know to be just and right."

And in submitting this initial submission, there's just information that's just lacking. And what we do here is that, it's not a denial. Okay? It's an initial submission.

So when we get a submission like this, it's not a denial, but what it does, it triggers us then to conduct a limited inquiry by sending the employee a request for additional information. And that's what happened here what -- as far as with this first letter.

Q Right. Okay. So if I may take that opportunity to segue into the follow-up that he provided.

MR. LAVEGLIA: Mr. John-Baptiste, if we could please pull up the first set of documents that I gave you?

THE WITNESS: Do -- do you mind if I have that in front of me again?

R. DAVID

MR. LAVEGLIA: Not at all.

THE REPORTER: Also, are you marking this, Counselor?

MR. LAVEGLIA: Yeah. If we could just mark this as Plaintiff's Exhibit 1.

(Plaintiff Exhibit 1 was marked for identification.)

THE REPORTER: Got it. Thank you.

MS. LINNANE: So Exhibit 2 will be the RF003; right, Chad?

MR. LAVEGLIA: Yes.

MS. LINNANE: Okay.

MR. LAVEGLIA: Thank you.

Yeah. So, Mr. John-Baptiste, if we can mark this as Plaintiff's Exhibit 2. Again, for the record, this is RF003.

(Plaintiff Exhibit 2 was marked for identification.)

BY MR. LAVEGLIA:

Q Okay. Are you able to see the document, Mr. David?

A Yes.

Q Okay. Do you recognize this document in front of you?

R. DAVID

A Yes.

Q And what do you recognize it to be?

A It's a response to our request for additional information.

Q Okay. If you please read it over if you need to, and when you're ready to talk about it, let me know.

A I'm -- I'm prepared to talk about it now.

Q Okay. So after Mr. Famigiepti submitted a follow up with additional information, you denied his request; right?

MS. LINNANE: Objection.

You can answer.

THE WITNESS: After considering both the initial submission and his response to the RFI, yes. His request was denied.

BY MR. LAVEGLIA:

Q Okay. So can you please -- just like you did before, can you discuss some of the grounds as to why you denied it?

A What I think is important as a

piece to this is that, again, you know, what triggered this second letter is that we actually sent a request for additional information.

And I think that would be helpful as far as explaining this letter, being able to also actually see what it is that we even asked for.

Q Okay. Let's see if I can pull that up.

MS. LINNANE: I have that handy. And, Chad, it's the version that we produced to you.

MR. LAVEGLIA: Okay --

MS. LINNANE: So -- email it to Mr. John-Baptiste, and then, he can share that.

MR. LAVEGLIA: Thank you, Kathleen.

MS. LINNANE: Yep.

Wayne B-J-R 27; correct?

THE REPORTER: Yeah. That's correct.

MS. LINNANE: Here. It's coming right now. Okay.

THE REPORTER: All right. All right.

R. DAVID

Downloaded it now. Oh. It opened up. There you go, Counsel.

MR. LAVEGLIA: Okay. Kathleen, would be okay if I marked this as Plaintiff's Exhibit 3?

MS. LINNANE: Sure.

(Plaintiff Exhibit 3 was marked for identification.)

MS. LINNANE: And the version that I produced was -- did have these email addresses redacted. So, Mr. John-Baptiste, we'll give you a version to include as an exhibit that has all of these email addresses redacted, since that's --

THE REPORTER: All right. No problem.

THE WITNESS: Do -- do you mind scrolling down past the emails to -- this one I don't have in front of me, but I can read this clearly here. So do you want me to explain?

BY MR. LAVEGLIA:

Q Yes, please. Thank you.

R. DAVID

A Okay. So we had the initial submission that was submitted to us on October 27th. I went over to you, as far as, you know, why we believed at the time that the information provided was insufficient and triggered, you know, for us to send a request for additional information.

If you don't mind, scroll all the way down to the end here. This case was initially assigned to Julie Cascino, who -- if her title there is, at the time, agency attorney. She was recently -- she was promoted the deputy director after that, and now, she's director of EEO and oversees the whole unit.

Q Okay.

A As she reviewed this, Famigiepti's case was initially assigned -- was assigned to her. She ended up sending the RFI after reviewing the initial submission, because she believed at the time that the information provided was not sufficient to approve him

for an exemption.

If you don't mind scrolling up, you can see exactly what she had sent.

Q Okay.

A "Good afternoon --" I'm not going to read it all, but when we get to the bullets here, they're targeted. These bullets were created -- these were -- these were not, you know, where we just create a whole bunch of bullets and they're sent to every -- these were targeted towards him.

As far as what we have here is that, again, there was a fetal sign -- fetal cell line objection. Right?

Q Yep.

A And we don't know what employees know or don't know about the vaccines, so it's helpful as far as making sure that they're aware that, you know, Moderna and Pfizer vaccines did not require any use of fetal cell lines in their production.

I know that this was a game changer for some who had contact with our

R. DAVID

office, but I don't know. That's why we had -- you know, providing the information, letting them know, and giving them an opportunity -- you know, a request to respond.

Also, one of the things that we're looking for here is consistency of said beliefs; right? So if there's an objection as far as use of fetal cell lines, how does that impact other medical decisions that you have made?

Again, they may not even know that there's many -- many commonly used medications that, you know, such as ibuprofen, other over the counter medications, that derive from, you know, fetal cell lines. And, again, that's something that we're looking for here.

Again, it was a request, trying to see how it impacted other medical decisions also related to vaccinations, and trying to see if there's any consistency at all here.

Q Okay.

R. DAVID

A And then, the third bullet, "Provide additional information how complying with the vaccine mandate will conflict with your sincerely held religious beliefs."

Again, we're working with a template. We're working with a template and a small paragraph that he included at the bottom, but doesn't give us too much detail from it.

We're trying to provide him with a forum to provide additional information that would help us make a -- a better determination before we went ahead and either approved or denied his exemption request.

So now, I'm -- I'm ready to go back to the --

Q All right. Thank you.

MR. LAVEGLIA: Mr. John-Baptiste, will you pull up Plaintiff's Exhibit 2? Thank you.

BY MR. LAVEGLIA:

Q All right. So, Mr. David, now

R. DAVID

looking at his response to the RFI, can you identify what was deficient about it?

A Yeah. So I'll start from a broad based view on this, and then, I can unpack it a little bit more.

Q Sure.

A Broad based, it's more of the same; copy and pasting. Okay. So what -- what do I mean by that? The Civil Rights Act in 1964, Title -- he quotes that, so I mean, that whole thing is just providing information about the law. Okay?

And then, right after that, where it says, "as stated in my original letter," beginning there and then going all the way until, I think, the last paragraph, so I think the next three paragraphs, all that is -- is just copy and paste from his initial submission.

It's just repeating the same template. So now, looking about -- looking at this from being a little bit more detailed here, is that I feel like

the waters were getting even more muddied here.

The first paragraph, "I was asked to provide additional info regarding my recently submitted religious exemption request.

"The following information should be sufficient, as my rights as a US citizen do not require that I seek approval from my employer or anyone to approve or accept my religious value, nor do I need to explain the reasons for my personal and moral decisions."

So now, is he talking here just religious -- not only religious views, but also personal views about the vaccine? That's how I'm interpreting it.

Q Right.

A But then, also, the request for additional information was an opportunity for him to provide additional information. And what we got here from him was not a whole lot of cooperation; we just received pushback.

R. DAVID

Now, if we scroll down to the last paragraph. Yeah. So if you can scroll up where -- yeah. The, "as a Catholic." So I believe this is what he had wrote that was new and unique.

So this is important, because right above it is, again, just all copy and paste from what we already had before, other than just including information about the law.

"As a Catholic, I'm morally against subjecting my body to a medical practice, such as this required immunization, as it is contradictory to obeying my conscience to faithfully make moral and ethical decisions that I noted to be just and right.

"It is also against my belief, practice, and constitutional rights to be obligated to explain the reasons for personal and religious beliefs and values."

That's interesting. So now, you're again combining both personal and

religious. So he -- how I'm looking at this here is that he's also including non-religious views, combining it with his religious.

Which one weighs more for him as far as the personal, religious, I don't know, but he's the one that's offering up the information.

"It is blatant discrimination to make an employment decision based on criteria that had nothing to do with an individual's ability to do his or her job well." Again, I'm not making any decision at this point. This is me just asking for information. Okay?

And also, we did have an exemption process, which I said we -- we did approve employees for.

Q Right.

A "According to the Free Exercise Clause of the first amendment of the United States Constitution, 'Freedom of conscience is the basis of the Free Exercise Clause, and government may not

R. DAVID

penalize or discriminate against an individual or a group of individuals because of their religious views, nor may it compel persons to affirm any particular beliefs.'"

I'm not affirming anyone to -- to prescribe to any sort of particular beliefs.

This is just your opportunity to explain to me your beliefs, which you -- and -- and again, I thought it was important to include the request for additional information email, because they were pointed questions, and he chose not to respond to any of them.

It's his right. Again, this was not an order; it was a request. And when we have this now, as far as, you know, his response to request for additional information, it really doesn't give us any new information.

And honestly, it hurts his case more, because now he's muddying it even more by including the personal views. So

for that reason, when it was reviewed -- and again, I don't have an independent recollection of this, I'm reviewing it now, why it would've been denied.

Q Okay.

A And if I was reviewing this today, it would be denied for those reasons.

Q Okay. Well, thank you. You were very thorough. So to the best you can for the ones that were granted, it'd be fair to say that it wasn't boilerplate requests that you received; right?

MS. LINNANE: Objection.

You can answer.

THE WITNESS: Can you -- can you -- what -- what do you mean by "boilerplate"?

BY MR. LAVEGLIA:

Q So as you described his original request to be, like, a template, you're meaning -- you meant to really say, like, he just copied it from somewhere else, and it was, kind of, language you've seen

R. DAVID

dozens of times, if not more. Right?

MS. LINNANE: Objection.

THE WITNESS: So -- I'm sorry, Kathleen. You said --

MS. LINNANE: I said objection.

You can answer.

THE WITNESS: Okay.

Again, it's factors to consider. It's not dispositive in and of itself. If he would've, you know, gave the template as the initial submission, again, we're not just denying it straight from that point.

We gave him an opportunity. If he would've came back and provided, you know, information about him, it could have helped and bolstered. But, you know, this wasn't just a, "Hey. You used a template. So for those reasons, you're denied."

BY MR. LAVEGLIA:

Q Right. Okay. So just let me try to rephrase then. What I'm trying to understand is, what are some of the differences in the ones that were granted

versus Mr. Famigiepti's?
MS. LINNANE: Objection.
You can answer.
THE WITNESS: The ones that were different, I'm speaking -- again, I haven't reviewed these in four years.
BY MR. LAVEGLIA:
Q Understood. I mean, I can rephrase it. So if Mr. Famigiepti had given you more responsive follow up and provided individualized, kind of, "basises" then, it would've potentially led to a different outcome. Is that fair?
MS. LINNANE: Objection.
You can answer.
THE WITNESS: It would've been very helpful.
MR. LAVEGLIA: Okay. All right. I have no further questions. Thank you for your time, Mr. David.
MS. LINNANE: Oh. So we're all set?
MR. LAVEGLIA: Yeah. We're all set. That's it.
MS. LINNANE: All right. It was nice

R. DAVID

to see you, Chad. I'm glad we were able to make it work.

MR. LAVEGLIA: Yeah. Thank you, Kathleen.

MS. LINNANE: Have a great weekend. We'll be in touch next week.

MR. LAVEGLIA: All right. You too. Take care, everybody.

MS. LINNANE: Thanks.

THE REPORTER: Take care.

MR. LAVEGLIA: Thank you.

THE REPORTER: We're off record. 10:48.

(Signature reserved.)

(Whereupon, at 10:48 a.m., the proceeding was concluded.)

CERTIFICATE OF DEPOSITION OFFICER

I, WAYNE JOHN-BAPTISTE JR., the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

Wayne Jr. J Baptiste Jr.

WAYNE JOHN-BAPTISTE JR.
Notary Public in and for the
State of New York

[X] Review of the transcript was requested.

CERTIFICATE OF TRANSCRIBER

I, SAMANTHA SNELLINK, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.



SAMANTHA SNELLINK

Famigiepti, Rocco v. City Of New York, Et Al.

Ryan David (#7547770)

E R R A T A   S H E E T

PAGE_____ LINE_____ CHANGE________________________

____________________________________________________

REASON______________________________________________

PAGE_____ LINE_____ CHANGE________________________

____________________________________________________

REASON______________________________________________

PAGE_____ LINE_____ CHANGE________________________

____________________________________________________

REASON______________________________________________

PAGE_____ LINE_____ CHANGE________________________

____________________________________________________

REASON______________________________________________

PAGE_____ LINE_____ CHANGE________________________

____________________________________________________

REASON______________________________________________

PAGE_____ LINE_____ CHANGE________________________

____________________________________________________

REASON______________________________________________

_________________________________   _______________

Ryan David                                Date

Famigiepti, Rocco v. City Of New York, Et Al.
Ryan David (#7547770)

ACKNOWLEDGEMENT OF DEPONENT

I, Ryan David, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

______________________________ ________________
Ryan David Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

______ DAY OF ________________, 20___.

__________________________

NOTARY PUBLIC

**&**

**&** 29:7,9

**0**

**003-26a** 24:16

**1**

**1** 3:8 34:6,7
**1,100** 13:24 17:11 18:23 19:4 25:24 27:14
**10/26/21** 3:9
**100** 2:15
**10007** 2:16
**10038** 1:19 6:24
**10:03** 1:14 4:6
**10:13** 16:20
**10:15** 16:23
**10:48** 50:14,16
**11/02/21** 3:14
**11/18/21** 3:11
**11788** 2:6
**15** 1:13 4:12
**18th** 1:18 6:23
**19** 9:17 11:7 13:22 26:14
**1964** 42:11
**1:2023cv027...** 1:8

**2**

**2** 3:10 34:10,16 34:18 41:22
**20** 54:15
**2020** 8:17
**2021** 8:22 19:7 22:21 23:17 25:7 26:20
**2025** 1:13 4:12
**212** 2:18
**23cv02754** 1:7
**26** 22:21 23:17 25:7
**26th** 25:10 26:18
**27** 20:17 26:19 36:21
**27th** 25:11 26:21 38:4
**28104** 51:16

**3**

**3** 3:12 37:6,8
**300** 19:5
**308** 2:5
**32782** 52:13
**34** 3:9,11
**350** 2:5
**356-1000** 2:18
**37** 3:14
**375** 1:18 6:22

**4**

**450-2468** 2:8
**4th** 22:4

**6**

**631** 2:8

**7**

**7** 3:3
**7547770** 1:21 53:2 54:2

**a**

**a.m.** 1:14 4:6 50:16
**ability** 45:13 51:9 52:6
**able** 11:5 12:5 12:10 20:2 26:11 27:3 34:21 36:8 50:2
**abortions** 28:23
**above** 44:8 54:7
**absent** 4:18
**accept** 43:12
**accommodati...** 19:11,18
**accommodati...** 9:12,16,20 13:21 15:16
**accurate** 51:8 52:5
**acknowledge...** 54:3
**acknowledge...** 4:15
**act** 42:11
**action** 7:11 51:11,15 52:8 52:11
**actually** 10:3 27:24 29:15 31:11 32:21 36:4,8
**adams** 1:9 2:11 4:11
**add** 14:9
**additional** 3:13 12:23,25 17:24 22:5 33:15 35:6,13 36:4 38:8 41:3,13 43:5,21,22 46:14,20
**additionally** 4:18
**additions** 54:6
**address** 6:20 20:13
**addresses** 37:12,15
**administer** 4:15
**administrative** 13:10

**affairs** 14:15
**affect** 31:17
**affirm** 46:5
**affirming** 46:7
**afternoon** 39:6
**agencies** 10:14
**agency** 13:4 38:14
**agree** 4:16,21
**ahead** 5:19 28:4 41:15
**al** 53:1 54:1
**allowed** 10:20
**amendment** 45:22
**answer** 7:13,14 10:11 11:16 13:7 14:6 19:13 25:21 35:17 47:16 48:7 49:4,16
**apologize** 23:23
**appended** 54:7
**applicable** 4:25
**applies** 28:14
**approval** 43:11
**approve** 38:25 43:12 45:19
**approved** 18:10 31:13 41:16
**approximate** 19:5
**arm** 15:24
**asked** 36:9 43:5
**asking** 17:24 45:15
**assessing** 11:23
**assessment** 30:22
**assign** 17:20
**assigned** 4:4 17:16 38:12,21 38:21
**assist** 14:15
**assuming** 13:17
**attorney** 5:22 38:14 51:13 52:9
**attorneys** 14:14
**audio** 51:7 52:3
**august** 1:13 4:12
**authoritative** 30:15
**authorities** 32:6,13
**authorized** 4:14
**aware** 39:21

**b**

**b** 3:5 20:17 36:21
**back** 16:23 17:4 28:8 41:19 48:16
**background** 16:13
**balance** 31:11
**baptiste** 1:20 4:3 5:10 20:6 23:9 24:3 33:21 34:15 36:17 37:13 41:21 51:2,17
**barking** 16:13
**based** 19:2,21 29:2,21 42:5,8 45:11
**basis** 12:2 19:22 45:24
**basises** 49:13
**bates** 21:16,19 24:16
**beginning** 42:17
**behalf** 2:2,10
**belief** 11:6,11 11:21 12:6,13 12:17 26:13 44:19
**beliefs** 40:9 41:6 44:22 46:6,9,11
**believe** 14:16 27:18 44:5
**believed** 12:12 38:5,24
**benefit** 28:18
**benefits** 30:22
**best** 7:20 20:8 26:8 47:11 51:9 52:5
**better** 22:15 30:6 41:14
**bit** 30:17,19 42:6,24
**blatant** 45:10
**blurry** 21:14
**boards** 9:14
**bodily** 31:3
**body** 27:21 32:24 44:13
**boilerplate** 47:13,19
**bolstered** 48:18
**bottom** 21:17 41:10
**break** 7:16
**bring** 23:5
**broad** 42:5,8
**broke** 17:12
**bullet** 28:19 30:11 41:2
**bullets** 39:8,9 39:11
**bunch** 39:11
**burdens** 30:24
**bureau** 14:15

**c**

**c** 2:1

**called** 6:14 15:10,11
**care** 50:9,11
**cascino** 38:12
**case** 1:6 28:25 29:24 38:11,20 46:23
**caseload** 17:10 17:21
**cases** 13:15
**catholic** 27:20 30:15 32:23 44:5,12
**catholics** 28:10
**cause** 17:10 20:9 22:12
**cell** 28:23 29:10 29:13 39:16,23 40:10,18
**certain** 19:6 28:11,21,25
**certificate** 51:1 52:1
**certified** 4:21
**certify** 51:4 52:2
**chad** 2:3,4 5:21 7:9 14:23 21:17 34:11 36:13 50:2
**change** 53:4,7 53:10,13,16,19
**changer** 39:25
**changes** 54:6
**chat** 20:8,10
**chokshi** 1:9 2:12 4:11
**chose** 46:15
**church** 2:15
**circumstances** 32:5
**citizen** 43:10
**city** 1:7,7,16 2:10,11,14 4:9 4:10 9:21 10:14 13:4 53:1 54:1
**city's** 9:8 13:12
**citywide** 13:9
**civil** 42:10
**cjllaw.org** 2:7
**clarify** 14:20
**clarifying** 16:3
**clause** 45:22,25
**claveglia** 2:7
**clear** 15:7 25:23
**clearly** 37:22
**combination** 10:5,7
**combining** 44:25 45:4
**come** 11:25
**coming** 24:9 36:23
**commonly** 40:14
**compel** 46:5
**complaints** 9:6 15:18
**complete** 54:8
**completely** 16:24
**complying** 41:4
**concern** 21:12
**concluded** 50:17
**concrete** 31:23 32:4
**conditions** 29:2
**conduct** 33:13
**conflict** 29:15 41:5
**conflicted** 11:7 11:11 12:13
**conflicts** 26:13
**congratulations** 8:7
**conscience** 29:3 33:3 44:16 45:24
**consider** 28:6 48:9
**consideration** 28:2 32:15
**considering** 35:18
**consistency** 40:8,24
**constitute** 5:5
**constitution** 45:23
**constitutional** 44:20
**contact** 39:25
**context** 9:17
**continue** 27:3,5
**contradict** 30:14
**contradictory** 33:2 44:15
**cool** 21:21
**cooperation** 43:24
**copied** 47:24
**copies** 22:12,14
**copy** 20:3 42:9 42:20 44:8
**corners** 12:16
**corp** 5:25
**correct** 8:24 11:14 13:19 18:16 22:25 23:18,20 36:21 36:22 54:8
**corrections** 54:6
**counsel** 5:20,25 24:10 37:3 51:10,13 52:6 52:9
**counselor** 7:2 34:4

**counter** 40:16
**course** 15:5
**court** 1:1
**covid** 9:17 11:7 13:22 26:14
**create** 39:11
**created** 39:9
**criteria** 11:19 45:12
**current** 7:24
**customize** 21:8

**d**

**d** 3:1 9:4
**date** 1:13 22:24 53:24 54:12
**dated** 22:4 23:17 25:7 26:18
**david** 1:9,12 2:12 4:1,8,11 5:1,11,11,13,16 5:17 6:1,2,2,10 6:13 7:1,6,24 8:1 9:1 10:1 11:1 12:1 13:1 14:1,19 15:1 16:1 17:1 18:1 19:1 20:1 21:1 21:24 22:1 23:1 24:1,13 24:23 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 34:22 35:1 36:1 37:1 38:1 39:1 40:1 41:1 41:25 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1,21 50:1 53:2,24 54:2,4 54:12
**day** 26:21 27:8 54:15
**dcas** 13:10
**deals** 31:9
**decision** 3:10 45:11,14
**decisions** 33:4 40:12,22 43:14 44:17
**declare** 54:4
**decline** 28:11
**deemed** 17:25 54:6
**defendants** 1:10 2:10 5:25
**deficient** 42:3
**demonstrate** 11:5 12:5,10 26:12
**demonstrated** 11:10
**denial** 33:9,12
**denied** 12:3 18:10 19:10,15 19:25 35:14,20 35:24 41:16 47:5,8 48:20
**deny** 28:4
**denying** 48:13
**department** 1:8 1:16 2:11,14 4:10 6:5 13:9 13:11
**deponent** 54:3
**deposition** 1:12 4:7 5:3 6:21 51:1
**deputy** 38:15
**derive** 40:17
**derived** 28:23
**describe** 9:18 18:5
**described** 47:21
**description** 3:6
**detail** 41:11
**detailed** 42:25
**determination** 13:2 18:4,21 41:15
**determine** 11:20 12:16 13:5
**differences** 48:25
**different** 49:6 49:14
**differently** 32:7
**digital** 51:7 52:3
**direct** 28:23
**directly** 28:14
**director** 6:3 7:25 8:5,11,14 8:22 9:4 15:7 38:15,16
**disclosures** 24:18
**discovery** 20:25
**discriminate** 46:2
**discrimination** 9:6 15:18 45:10
**discuss** 8:25 16:9 35:23
**dispositive** 28:3 48:10
**district** 1:1,2
**distrust** 32:11 32:12
**diversity** 8:12 8:15
**doctor** 29:6
**document** 21:10 24:24 34:22,25
**documented** 12:19

**documents** 12:17 20:7 21:3 33:23
**dog** 16:13,15
**doing** 4:13 15:21,21
**doubt** 28:18
**downloaded** 37:2
**downloading** 21:6 24:8
**dozens** 48:2
**dsny** 1:8,17 2:11 3:12 9:23
**due** 27:8
**duly** 6:15 51:5
**duty** 28:20

**e**

**e** 2:1,1 3:1,5 5:22 6:23 9:4 53:3,3,3
**early** 29:13
**eastern** 1:2
**ee** 15:10
**eeo** 9:8,12 13:12 15:8,9 15:12 38:16
**effect** 10:6
**effective** 31:14
**effects** 30:24 31:16
**efficacy** 29:14
**either** 10:15 41:16
**elaborate** 30:3
**email** 3:12 12:21 17:18 20:6,9,13 23:8 36:16 37:11,15 46:14
**emailing** 20:18 23:22
**emails** 37:20
**employed** 51:10,13 52:7 52:9
**employee** 9:11 11:4,4 12:20 15:15 17:17 26:11,21 33:14 51:12 52:9
**employee's** 18:8
**employees** 9:13 9:23 10:5,13 10:19 14:2,17 16:5 39:18 45:19
**employer** 43:11
**employment** 6:4 8:2 9:14 45:11
**ended** 38:22
**equal** 6:4 8:2
**equity** 6:3 8:12 8:15
**eric** 1:9 2:11 4:11
**es** 51:4
**esquire** 2:3,13
**essentially** 15:9
**et** 53:1 54:1
**ethical** 33:4 44:17
**everybody** 50:9
**evidentiary** 5:2
**exactly** 39:4
**examination** 3:2 7:4
**examined** 6:17
**executive** 6:2 7:25 8:5 15:7
**exempted** 11:12
**exemption** 3:8 3:11 9:20,22 9:23 10:2,15 10:18 15:17 18:9 19:3,15 19:18,20 25:4 26:22 27:2 39:2 41:16 43:6 45:18
**exemptions** 10:9 13:13
**exercise** 45:21 45:25
**exhibit** 3:8,10 3:12 34:6,7,10 34:16,18 37:6 37:8,14 41:22
**explain** 31:7 37:23 43:13 44:21 46:11
**explaining** 36:7

**f**

**factor** 32:13
**factors** 27:25 48:9
**fair** 18:22 47:13 49:14
**faithfully** 33:3 44:16
**famigiepti** 1:4 2:2 4:9 5:23 7:10 19:8 28:11 35:12 49:10 53:1 54:1
**famigiepti's** 19:21,23 25:3 38:20 49:2
**far** 12:4 13:14 17:20 25:25 26:4,10 28:3,5 28:15 30:5 31:7,10 32:11 32:14 33:16 36:7 38:4 39:14,20 40:10 45:7 46:19
**fda** 31:14

**feel** 42:25
**felt** 12:24
**fetal** 29:10,13 39:15,16,23 40:10,18
**final** 18:20
**financially** 51:14 52:10
**find** 22:8 32:19
**first** 6:14 11:22 20:15 26:17 27:7,15 33:17 33:22 43:4 45:22
**fix** 16:16
**floor** 1:18 6:23
**focusing** 9:15
**follow** 12:22 33:19 35:13 49:11
**following** 43:8
**follows** 6:17
**foregoing** 51:3 51:4 52:4 54:5
**foremost** 27:7
**forgot** 16:24
**formerly** 15:9
**forum** 41:13
**four** 12:16 14:7 49:7
**free** 7:2 45:21 45:24
**freedom** 45:23
**friday** 1:13 4:12
**front** 20:4 22:13 23:2,12 24:23 33:25 34:25 37:21
**further** 49:20 51:12 52:8

**g**

**g** 5:22
**game** 39:24
**gather** 12:24
**general** 12:15 28:20
**generally** 28:15
**getting** 11:7 12:14 26:14 43:2
**give** 6:20 14:8 28:17 37:13 41:10 46:21
**given** 17:9,9 49:11 54:9
**giving** 40:4
**glad** 50:2
**gmail** 20:17
**go** 5:19 16:23 21:10 28:4 30:8,10 31:6 37:3 41:18
**going** 4:5,6 7:11 16:22 28:4,4 39:7 42:17
**good** 7:6,8 30:25 39:6
**goods** 31:3
**government** 45:25
**grant** 19:3
**granted** 10:19 47:12 48:25
**great** 25:17 50:6
**grounds** 25:19 35:24
**group** 46:3
**guess** 7:15 18:2
**guys** 6:7

**h**

**h** 3:5 53:3
**hand** 6:10,19
**handy** 36:12
**happened** 33:16
**harassment** 9:7 15:19
**hard** 21:14
**hauppauge** 2:6
**health** 32:5,12
**hear** 16:12
**hearing** 6:8
**held** 11:6,11,21 12:18 13:11 26:13 41:5
**help** 41:14
**helped** 48:18
**helpful** 36:7 39:20 49:18
**hereto** 51:13 52:10 54:7
**hey** 48:19
**hold** 8:10
**honestly** 46:23
**human** 28:22
**hurts** 46:23

**i**

**ibuprofen** 40:16
**identification** 34:8,19 37:9
**identify** 25:18 42:3
**identities** 5:8
**immunization** 33:2 44:15
**impact** 40:11
**impacted** 40:21
**important** 26:20,23 32:19 35:25 44:7 46:13
**include** 37:14 46:13
**included** 41:9
**includes** 32:21
**including** 28:10 28:21 31:2

44:10 45:3 46:25
**inclusion** 8:13 8:16
**independent** 25:25 47:3
**indicating** 29:24
**individual** 11:20 17:16 28:10 46:3
**individual's** 45:13
**individualized** 49:12
**individuals** 32:6 46:3
**info** 43:5
**information** 3:14 12:25 17:25 22:5 28:16 29:18 30:4 31:19 33:7,15 35:6 35:14 36:5 38:6,9,24 40:4 41:3,13 42:13 43:8,21,22 44:10 45:9,16 46:14,21,22 48:17
**informed** 30:12
**initial** 3:8 17:23 22:7,21 24:18 25:5 26:15 29:20 33:6,10 35:19 38:2,23 42:21 48:12
**initially** 38:12 38:20
**inquiry** 33:14
**insufficient** 30:5 38:7
**integral** 30:25
**intended** 4:24
**interchangea...** 19:19
**interested** 51:14 52:11
**interesting** 29:5,22 44:24
**internal** 9:5
**interpretation** 31:8
**interpreting** 43:18
**intervention** 30:23 31:23 32:4
**interventions** 30:13
**introduce** 5:20
**investigating** 15:17
**investigative** 15:24
**it'd** 47:12

**j**

**j** 2:3,4 20:17 36:21
**january** 8:17
**job** 1:21 45:13
**john** 1:20 4:3 5:10 20:6 24:3 33:21 34:15 36:17 37:13 41:21 51:2,17
**johnson** 29:7,7 29:9,9
**jr** 1:20 51:2,17
**judge** 32:7
**judgment** 29:2 31:25
**judgments** 30:12
**julie** 38:12
**june** 8:6,18

**k**

**kathleen** 2:13 5:24 20:24 24:19 36:19 37:4 48:5 50:5
**kind** 28:12 47:25 49:12
**klinnane** 2:17
**knew** 27:10
**know** 7:13,13 7:17,20 9:7,19 15:3 20:2,10 20:21 21:7 25:14 26:4,11 28:16 29:18,19 31:8,9,19,21 32:15 33:4 35:9 36:2 38:5 38:7 39:10,18 39:19,19,21,24 40:2,3,4,5,13 40:15,17 45:8 46:19 48:11,16 48:18
**knowledge** 51:9 52:6

**l**

**l** 5:22,22 6:23
**lacking** 33:8
**language** 47:25
**laveglia** 2:3,4 3:3 5:16,21,21 7:3,5,9 10:17 11:2,18 13:16 14:10,24 15:5 16:2,14,24 17:3,13 19:16 20:5,12,16,18 20:21 21:3,9 21:15,19,22,23 23:8,19,22 24:2,6,11,12,15 24:21,22 26:6 33:21 34:2,5 34:12,14,20

35:21 36:15,19 37:4,24 41:21 41:24 47:20 48:21 49:8,19 49:23 50:4,8 50:12
**law** 2:4,14 13:11 42:13 44:11
**law.nyc.gov** 2:17
**laws** 5:2
**lawyer** 8:19
**lead** 28:9
**led** 49:14
**legal** 14:15
**letter** 23:17 33:17 36:3,7 42:17
**letting** 40:4
**light** 30:25
**limited** 33:13
**line** 23:16 39:16 53:4,7 53:10,13,16,19
**lines** 28:23 29:10,13 39:23 40:11,18
**linnane** 2:13 5:10,15,24 10:10,22 11:15 13:6 14:5,19 15:2 19:12 21:2,4,13,16 23:10,15,21,25 24:20 25:20 34:10,13 35:16 36:12,16,20,23 37:7,10 47:15 48:3,6 49:3,15 49:22,25 50:6 50:10
**little** 21:14 30:17,19 42:6 42:24
**location** 1:15
**long** 8:14
**look** 20:3 22:13 28:18
**looked** 18:3
**looking** 12:4 31:12 40:8,19 42:2,23,24 45:2
**looks** 32:9
**lot** 16:4,5 27:14 43:24

**m**

**made** 9:23 18:4 32:2 40:12 54:5
**make** 10:14 15:2 17:17 18:7,11,15,20 23:11 25:23 33:3 41:14 44:16 45:11 50:3
**making** 12:25 39:20 45:14
**mandate** 41:4
**manner** 5:3
**manufacturing** 29:11
**mark** 34:6,16
**marked** 34:7 34:18 37:5,8
**marking** 34:3
**matter** 4:9
**mean** 10:3 14:20 22:12 42:10,12 47:18 49:9
**meaning** 15:13 47:23
**means** 5:4
**meant** 47:23
**medical** 10:15 27:22 28:21 30:13,23 32:25 40:11,21 44:13
**medications** 40:15,17
**meetings** 13:12
**mentions** 31:21
**middle** 30:20
**mind** 22:2,6,11 22:15 27:19 28:7 30:16 32:16 33:24 37:19 38:10 39:3
**missing** 31:19
**moderna** 29:8 29:12,16 39:21
**moral** 28:20 30:15 33:4 43:14 44:17
**morally** 27:21 32:24 44:12
**morning** 7:6,8
**motor** 2:5
**muddied** 43:2
**muddying** 46:24

**n**

**n** 2:1 3:1
**name** 4:2 7:7,9 20:15,15 27:16
**nature** 11:24
**necessary** 12:24 17:25 54:6
**need** 7:16 14:8 21:7 35:8 43:13
**needs** 26:11
**neighbor's** 16:16
**neither** 51:10 52:6
**new** 1:2,7,7,16 1:19 2:10,10 2:14,16 4:10

4:10,16 6:23 6:23 15:20 44:6 46:22 51:19 53:1 54:1
**nice** 49:25
**non** 11:25 32:10 45:3
**notary** 4:14 51:18 54:13,19
**noted** 44:17 54:7
**november** 8:22 19:7 22:4
**number** 21:20 27:17
**numbers** 21:16
**ny** 1:19 2:6,16

**o**

**o** 9:4
**oaths** 4:15
**obeying** 33:3 44:16
**objection** 4:18 10:10,22 11:15 13:6 14:5 19:12 25:20 29:17 35:16 39:16 40:10 47:15 48:3,6 49:3,15
**objections** 6:8
**obligated** 44:21
**october** 22:21 23:17 25:7,10 25:11 26:18,19 26:20 38:4
**oedi** 8:23 9:24 14:13,21 15:10 15:11,13,14,23
**offering** 45:8
**office** 2:4 6:3 8:2,12,15 12:21 15:22 25:6 26:19,22 28:16 40:2
**officer** 51:1,2
**officers** 13:12
**oh** 21:19 37:2 49:22
**okay** 5:13 7:21 8:19 9:15,25 11:9 13:3,17 14:11,18,24 16:3,9 17:7,14 18:2,17,22 19:2,6,10 20:16,18 21:21 22:16,17 23:3 23:21,22,25 24:2,8,11,20 25:2,12,17 26:7 30:10 33:9,18 34:13 34:21,24 35:7 35:12,22 36:10 36:15,24 37:4 37:5 38:2,18 39:5 40:25 42:9,14 45:16 47:6,10 48:8 48:22 49:19
**once** 17:15 18:3 18:18
**ones** 47:12 48:25 49:5
**opened** 37:2
**opinion** 30:5 31:20
**opportunity** 6:4 8:2 33:19 40:5 43:21 46:10 48:15
**order** 46:18
**original** 25:3 42:16 47:21
**outcome** 49:14 51:14 52:11
**outright** 29:22
**outweigh** 30:23 31:16
**oversaw** 9:10 9:12,22 10:3,4
**oversee** 13:22
**overseeing** 9:5 15:24
**oversees** 38:17
**own** 17:10 32:7

**p**

**p** 2:1,1 6:23
**page** 3:2,6 53:4 53:7,10,13,16 53:19
**pandemic** 9:17 13:23
**paragraph** 27:16 30:18 31:21 32:17,19 41:9 42:19 43:4 44:3
**paragraphs** 42:20
**parkway** 2:5
**part** 11:22 31:5 32:21
**particular** 23:16 46:5,8
**parties** 4:16,20 51:11,13 52:7 52:10
**past** 37:20
**paste** 42:21 44:9
**pasting** 42:9
**pearl** 1:18 6:22
**penalize** 46:2
**perfect** 21:4
**permissible** 28:24
**permitted** 4:24 9:21 10:14

27:2
**person** 17:8 30:25 32:2
**person's** 30:11
**personal** 43:14 43:17 44:22,25 45:7 46:25
**personally** 31:9
**persons** 46:5
**perspective** 31:17
**pfizer** 29:8,12 29:16 39:22
**pharmaceutical** 29:6
**piece** 27:23 32:20 36:2
**place** 6:19
**plaintiff** 1:5 2:2 3:7,12 5:23 7:11 34:7,18 37:8
**plaintiff's** 34:6 34:16 37:5 41:22
**please** 5:9 7:13 7:19 8:25 9:18 16:17 20:13 21:10,25 25:13 26:7 30:9 33:22 35:7,22 37:25
**pllc** 2:4
**point** 18:24 19:6 27:9,11 27:11 32:15 45:15 48:14
**pointed** 46:15
**policies** 13:4
**policy** 9:9 10:9 10:12
**position** 7:24 8:9 9:3
**potential** 31:22 32:3
**potentially** 32:10 49:13
**practice** 27:22 32:25 44:14,20
**prepared** 25:15 26:3 35:10 52:3
**prescribe** 46:8
**prevention** 6:5 8:3 15:8
**prior** 8:10 51:5
**problem** 20:20 24:5 37:18
**procedural** 4:25
**proceeding** 1:15 4:5,23 50:17 52:4
**proceedings** 51:3,4,5,8 52:5
**process** 9:21,22 10:2 18:5 45:18
**processed** 17:15
**processing** 9:10 15:15,16
**produced** 4:22 28:22 36:14 37:11
**production** 29:11 39:23
**products** 28:21
**professional** 29:6
**promoted** 38:15
**promotion** 8:18
**promotional** 15:20
**properly** 20:11
**proportionality** 30:13,21 32:2
**provide** 13:5 41:3,12,13 43:5,22
**provided** 33:20 38:6,25 48:16 49:12
**providing** 28:16 40:3 42:13
**psychological** 31:2
**public** 32:5,11 32:12 51:18 54:19
**pull** 33:22 36:10 41:22
**purposes** 23:15
**pushback** 43:25
**put** 20:7
**putting** 27:16

**q**

**qualified** 51:7
**question** 7:19 16:25 19:22
**questioning** 23:16
**questions** 7:12 12:23 46:15 49:20
**quick** 27:19
**quickly** 20:22
**quotes** 42:11

**r**

**r** 2:1 4:1 5:1 6:1 6:23 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 20:17 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1

36:21 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 53:3,3
**raise** 6:10
**read** 17:3 22:10 25:13 31:24 35:7 37:22 39:7 54:5
**reading** 14:3 28:8 32:9
**ready** 23:24 35:8 41:18
**real** 27:19
**really** 46:21 47:23
**reason** 12:7 47:2 53:6,9,12 53:15,18,21
**reasonable** 9:11 15:16
**reasons** 10:16 10:16 43:13 44:21 47:9 48:20
**recall** 10:13 13:8
**received** 18:18 25:10,10 26:19 27:8 28:8 43:24 47:14
**recently** 38:14 43:6
**recipient** 31:22 32:3
**recognize** 24:24 25:2 34:24 35:3
**recollection** 25:25 47:4
**recommendat...** 18:7,12,15,18
**record** 4:4,6,19 5:9 14:20 16:20,21,23 17:6 24:16 34:17 50:13 51:9 52:5
**recorded** 5:3 51:6
**recording** 4:22 51:8 52:3
**redacted** 37:12 37:15
**reduced** 51:6
**reference** 27:17
**refuse** 28:20
**refusing** 29:23
**regarding** 43:5
**related** 9:13 40:22 51:10 52:7
**relative** 51:12 52:9
**religion** 17:11
**religious** 3:8,11 10:16,24 11:6 11:11,21,24 12:2,6,13 13:21 19:22 26:13 29:17 31:17 32:10 41:6 43:6,12 43:16,16 44:22 45:2,4,5,7 46:4
**remote** 1:15 4:13
**remotely** 4:17
**repeated** 17:5
**repeating** 42:22
**rephrase** 7:20 48:23 49:10
**reported** 1:20
**reporter** 4:2,3 5:13,17,24 6:7 6:18,25 16:19 16:22 17:5 20:9,14,17,20 21:5,21 24:4,7 34:3,9 36:22 36:25 37:17 50:11,13
**represent** 7:10
**request** 3:9,10 10:4 12:3,3,11 17:18,23 18:9 18:19 19:8,11 19:14,24 22:5 27:4 33:14 35:5,14,20 36:4 38:8 40:5 40:20 41:17 43:7,20 46:13 46:18,20 47:22
**requested** 17:6 51:21
**requesting** 3:13
**requests** 9:11 9:16,23 10:15 13:20 14:3 15:15,17 16:4 17:11,15,24 18:23 19:3 47:14
**require** 39:22 43:10
**required** 32:25 44:14 54:13
**reserved** 50:15
**respected** 30:14
**respond** 40:6 46:16
**response** 22:4 35:5,19 42:2 46:20
**responsibilities** 9:2
**responsible** 14:2

**responsive** 49:11
**review** 12:22 13:22 17:10 18:19,24 19:2 19:7 21:25 27:4 32:14 51:21
**reviewed** 10:4 16:7 25:24 27:13 38:19 47:2 49:7
**reviewer** 17:20 17:22 18:3,14
**reviewers** 17:8
**reviewing** 13:13,14 17:23 26:2,4,15 27:10 38:22 47:4,7
**rf** 24:16
**rf0003** 21:20
**rf003** 34:11,17
**rf004-26a** 24:17
**rfi** 35:20 38:22 42:2
**right** 5:19 6:10 7:3,23 8:21,23 10:8 13:18 16:19,22 18:24 19:11,20 20:12 20:14 21:5,6 21:12,24 23:13 24:4,7,9 25:8 31:5 33:5,18 34:11 35:15 36:24,25,25 37:17 39:16 40:9 41:20,25 42:15 43:19 44:8,18 45:20 46:17 47:14 48:2,22 49:19 49:25 50:8
**rights** 42:11 43:9 44:20
**rocco** 1:4 2:2 4:9 5:23 7:10 19:8 28:10 53:1 54:1
**role** 9:18,25
**rules** 5:2
**ryan** 1:12 4:8 5:11,12,13,16 5:17 6:2,13 23:10 53:2,24 54:2,4,12

**s**

**s** 2:1 3:5 53:3
**safe** 31:14
**samantha** 52:2 52:14
**sanitation** 1:8 1:17 2:11 4:11 6:6
**sat** 9:14
**saying** 28:13 29:23
**says** 27:20 28:19 30:21 42:16
**screen** 20:4
**scroll** 27:18 30:18 38:10 44:2,4
**scrolling** 28:7 30:16 32:16 37:20 39:3
**second** 14:8 16:17 22:9 27:9 28:19 36:3
**see** 21:14 24:13 34:21 36:8,10 39:4 40:21,23 50:2
**seek** 43:10
**seen** 47:25
**segue** 33:19
**send** 24:2 38:8
**sending** 33:14 38:22
**sent** 36:4 39:4 39:12
**sentence** 31:24
**services** 13:10
**sessions** 13:18
**set** 24:9 33:22 49:22,23
**seven** 14:16
**share** 20:4 36:17
**short** 13:10
**side** 30:24 31:15
**sign** 39:15
**signature** 50:15 51:16 52:13
**sincerely** 11:6 11:10,21 12:17 26:12 41:5
**sincerity** 12:10
**single** 18:14,23
**situations** 32:8
**six** 14:16
**skills** 51:9 52:6
**slow** 22:18
**small** 41:9
**snellink** 52:2 52:14
**sorry** 14:23 19:17 22:18 48:4
**sort** 46:8
**speak** 23:23
**speaking** 28:15 49:6
**specific** 28:25 29:25
**specifically** 9:15 10:24 25:18

**speculate** 7:14
**spiritual** 31:2
**st** 2:15
**staff** 14:2
**stage** 29:19
**stamped** 24:16
**standard** 26:9
**standardized** 16:6
**start** 22:2,6 42:4
**starts** 21:11
**state** 4:16 5:8 51:19
**stated** 42:16
**states** 45:23
**stenographic** 5:4
**stick** 19:19 26:17
**stipulation** 5:6
**straight** 48:13
**street** 1:18 6:22
**stuff** 20:24
**subjecting** 27:21 32:24 44:13
**submission** 12:21 22:7,21 25:3,6 26:16 26:18 29:20 32:22 33:7,10 33:11 35:19 38:3,23 42:21 48:12
**submit** 12:20 26:22,24 27:6
**submitted** 26:25 27:15 35:13 38:3 43:6
**submitting** 33:6
**subscribed** 54:14
**sufficient** 25:19 38:25 43:9
**suite** 2:5
**sure** 15:3 21:2 23:11 24:21 26:7 27:10 37:7 39:20 42:7
**suspected** 9:8
**swear** 4:16 6:8
**switch** 5:18
**sworn** 4:19 6:15 51:5 54:14
**system** 16:6,10

**t**

**t** 3:5 53:3,3
**take** 4:4,14 7:16 11:13 25:13 28:2 33:18 50:9,11
**taken** 4:8 51:3 51:11 52:8
**talk** 10:8 25:15 26:3 31:15 35:9,10
**talking** 10:23 15:3 43:15
**targeted** 39:8 39:13
**tasked** 9:5 13:13 15:14 17:9,23
**teaching** 28:9
**teachings** 28:9 30:15
**tell** 6:15
**template** 27:9 30:2 31:4,6 32:18 41:8,8 42:23 47:22 48:11,19
**ten** 14:17 17:8
**term** 9:19
**terrible** 19:22
**test** 29:13
**testified** 6:17
**testifying** 51:5
**testimony** 54:8
**testing** 27:6
**thank** 5:15,19 6:7,18,25 7:3 7:22,23 8:8 16:3 17:4 24:6 24:11 25:12 34:9,14 36:19 37:25 41:20,23 47:10 49:20 50:4,12
**thanks** 21:21 24:20 50:10
**therapeutic** 30:21 31:25
**thing** 15:21 23:12 25:22 29:4 42:12
**things** 26:16 28:6 40:7
**think** 16:13 22:14 35:25 36:6 42:18,19
**third** 21:10 30:11 41:2
**thorough** 47:11
**thought** 46:12
**three** 14:14 21:3 42:19
**time** 1:14 5:7 10:13 14:13 19:7 25:13 26:3 38:5,13 38:24 49:21
**timely** 26:22,24 27:2
**times** 48:2
**timing** 26:17
**title** 15:20 38:13 42:11

**today** 4:5,12 6:21 47:8
**touch** 50:7
**towards** 32:12 39:13
**track** 16:6
**training** 13:18
**trainings** 9:13
**transcriber** 52:1
**transcript** 4:21 51:21 52:3,4 54:5,8
**transcriptionist** 51:7
**triggered** 36:3 38:7
**triggers** 33:13
**true** 51:8 52:4 54:8
**truly** 12:11,12
**truth** 6:15,16 6:16
**try** 7:20 16:14 16:16 19:19 48:23
**trying** 18:2 30:6 40:20,23 41:12 48:23
**turned** 20:25
**two** 14:12
**type** 10:18
**typewriting** 51:6

**u**

**u.s.** 1:1
**under** 4:25 27:4 28:25
**understand** 4:20 7:19 18:3 48:24
**understanding** 14:22 27:5 29:10 30:6
**understood** 7:22 49:9
**undesirable** 30:24 31:15
**unique** 27:23 32:20 44:6
**unit** 15:12 38:17
**united** 45:23
**unpack** 42:6
**unpacks** 30:17
**unsure** 28:12
**use** 28:20,24 39:22 40:10
**used** 9:19 29:10 29:12 31:5 40:14 48:19
**uses** 4:24
**using** 11:19 19:17 28:22 30:2

**v**

**v** 1:6 5:22 53:1 54:1
**vaccinations** 40:22
**vaccine** 11:8,12 11:13 12:8,14 26:14 29:7,17 29:24 31:13 41:4 43:17
**vaccines** 28:12 28:22,25 39:19 39:22
**value** 43:12
**values** 44:23
**various** 9:14
**verbiage** 19:20
**veritext** 4:4
**version** 36:13 37:10,14
**versus** 49:2
**videoconfere...** 2:3,13
**view** 42:5
**views** 12:2 32:11 43:16,17 45:4 46:4,25
**violations** 9:8
**violence** 6:5 8:3 15:8
**virtual** 13:11
**vs** 4:9

**w**

**walk** 20:22
**want** 7:14 15:2 22:10,17 23:5 23:11 25:22 30:7 37:22
**wanted** 5:11
**waters** 43:2
**way** 17:12 20:8 27:22 31:7 38:11 42:18
**wayne** 1:20 4:2 20:15 36:21 51:2,17
**week** 50:7
**weekend** 50:6
**weekly** 27:6
**weighs** 45:6
**welcome** 8:9 21:22
**went** 13:17 38:4 41:15
**withdrawn** 19:23,24
**witness** 4:17,19 4:20 6:9,14,22 10:12,23 11:17 13:8 14:7,25 15:6 16:12,18 17:2,7 19:14 23:14,20 25:22 33:24 35:18 37:19 47:17

48:4,8 49:5,17 51:4
**work** 27:3 50:3
**worked** 15:14 16:10
**working** 16:5 26:10 32:18 41:7,8
**workplace** 6:4 8:3 15:8
**worries** 16:18
**would've** 47:5 48:11,16 49:13 49:17
**wow** 13:25
**write** 21:18
**writes** 32:23
**writing** 27:23 32:21
**written** 5:5 13:3
**wrote** 27:24 44:6

**x**

**x** 3:1,5 51:21

**y**

**yeah** 15:5,10 16:14 20:5,14 21:2,9,12,19 23:7 26:7 34:5 34:15 36:22 42:4 44:3,4 49:23 50:4
**year** 8:6,18
**years** 49:7
**yep** 21:4 36:20 39:17
**york** 1:2,7,7,16 1:19 2:10,10 2:14,16 4:10 4:10,16 6:23 6:23 51:19 53:1 54:1

**z**

**zoom** 4:13

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.